PEOPLE v COOKS

Docket No. 97114. Argued January 12, 1994 (Calendar No. 11). Decided August 29, 1994.

Ricky Cooks was convicted by a jury in the Detroit Recorder's Court, John H. Hausner, J., of second-degree criminal sexual conduct involving a ten year old. The Court of Appeals, SHEPHERD, P.J., and WEAVER and TAYLOR, JJ., reversed in an unpublished opinion per curiam because the trial court refused to instruct the jurors that unanimous agreement about a specific act of penetration is required for conviction (Docket No. 126607). The people appeal.

In an opinion by Justice GRIFFIN, joined by Chief Justice CAVANAGH, and Justices BRICKLEY, BOYLE, RILEY, and MALLETT, the Supreme Court *held:*

Where the state offers evidence of multiple acts by a defendant, each of which would satisfy the actus reus elements of a single charged offense, the trial court is required to instruct the jury that it must unanimously agree on the same specific act if the acts are materially distinct or if there is reason to believe the jurors may be confused or disagree about the factual basis of the defendant's guilt. Where neither of these factors is present, a general instruction to the jury that its verdict must be unanimous does not deprive the defendant of the right to a unanimous verdict.

1. Under the Michigan Constitution a criminal defendant is entitled to a unanimous jury verdict. In order to protect this right, it is the duty of the trial court to properly instruct the jury regarding unanimity. However a specific unanimity instruction is not required in all cases in which more than one act is presented as evidence of the actus reus of a single criminal offense. The critical inquiry is whether either party has presented evidence that materially distinguishes any of the alleged multiple acts from the others. If the state presents alternate acts allegedly committed by the defendant as evidence of the actus reus element of the charged offense, a

REFERENCES
Am Jur 2d, Jury § 13; Trial, §§ 1079, 1437, 1753.
See ALR Index under Instructions to Jury.

general instruction to the jury that its decision must be unanimous will be adequate unless the alternative acts are materially distinct or there is reason to believe the jurors might be confused or disagree about the factual basis of the defendant's guilt.

2. In this case, the evidence offered to support each of the alleged acts of penetration was materially identical; the multiple acts were tantamount to a continuous course of conduct. The defendant did not present a separate defense or offer materially distinct evidence of impeachment regarding any particular act. The sole task of the jury was to determine the credibility of the victim with respect to the pattern of alleged conduct. Because neither party presented materially distinct proofs regarding any of the alleged acts, the factual basis for the specific unanimity instruction was nonexistent. Absent any indication of juror confusion or disagreement over the existence of any of the alternative acts, a specific unanimity instruction is not required.

Reversed.

Justice LEVIN, dissenting, stated that the trial judge erred in refusing to instruct the jurors that they must be unanimous regarding which specific act of sexual penetration was committed by the defendant.

When evidence introduced at trial indicates that several distinct criminal acts have been committed, and the defendant is charged with only one count of criminal conduct, jury unanimity must be protected in the following manner. The prosecution, in its discretion, may elect the act upon which it will rely for conviction. Absent an election, the jury must be instructed that all twelve jurors must agree that the same underlying criminal act has been proven beyond a reasonable doubt, thereby assuring that a conviction rests upon a unanimous verdict based on one criminal act.

When circumstances of a particular case indicate a likelihood of juror disagreement about which acts the defendant committed, special verdicts are advisable to provide additional assurance that a verdict is supported by unanimous jury agreement.

In the event that it is impractical to elect one of many acts testified, the prosecutor can choose not to elect a particular act. If the prosecutor does not elect, the jury must be instructed that it must unanimously agree on which specific act supports the charged crime. Unless the court requires a specific unanimity instruction, there is no assurance that the jurors unanimously found that the prosecutor proved, beyond a reasonable

doubt, every fact necessary to constitute the crime with which the defendant is charged.

A specific unanimity instruction is not required only when the various acts themselves are materially distinct. When the prosecution puts in evidence separate and identifiably different instances of the same or similar criminal conduct, the court should be required to instruct the jury that it must unanimously agree on which of the several acts forms the basis of the conviction.

CONSTITUTIONAL LAW — CRIMINAL LAW — JURY INSTRUCTIONS — MULTIPLE CRIMINAL ACTS — UNANIMOUS VERDICTS.

Where the state offers evidence of multiple acts by a defendant, each of which would satisfy the actus reus elements of a single charged offense, the trial court is required to instruct the jury that it must unanimously agree on the same specific act if the acts are materially distinct or if there is reason to believe the jurors may be confused or disagree about the factual basis of the defendant's guilt; where neither of these factors is present, a general instruction to the jury that its verdict must be unanimous does not deprive the defendant of the right to a unanimous verdict.

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, *John D. O'Hair,* Prosecuting Attorney, *Timothy A. Baughman,* Chief, Research, Training, and Appeals, and *Carolyn M. Breen,* Assistant Prosecuting Attorney, for the people.

*William R. Stackpoole* for the defendant.

GRIFFIN, J. In this case, defendant was charged with one count of first-degree criminal sexual conduct,[1] but testimony elicited from the complainant at trial referred to three incidents of sexual penetration. Although the jury was instructed in general terms that its verdict must be unanimous, defendant's conviction of second-degree criminal sexual conduct was vacated by the Court of Appeals because the trial court refused to instruct

[1] MCL 750.520b; MSA 28.788(2).

the jurors that unanimous agreement about a specific act of penetration is required for conviction. Because materially identical evidence was offered with respect to each of the alleged acts of penetration and there is no reason to believe the jury was confused or disagreed about the basis of defendant's guilt, we conclude that the trial court did not err, and we reverse the decision of the Court of Appeals.

I

Charging defendant with one count of first-degree criminal sexual conduct, the information alleged that "on or about Jan, 1989," defendant "[d]id engage in sexual penetration, to-wit: anal intercourse with the complainant, a person under 13 years of age, contrary to sec. 750.520 B (1) M.C.L.A." Complainant was ten years of age at the time of the alleged acts.

The complainant testified that in January 1989, she and her four siblings lived with their cousin, Joanne Burris, in a house in Detroit. Defendant and George White lived in the basement of the home.

Complainant stated that Ms. Burris was away from the home during the day for a week in January 1989 to cook at a church revival.[2] Although she could not remember the specific date, the child recalled that on Monday morning during this week, she and defendant were alone in the home. Defendant allegedly approached complainant from behind while she was cleaning the living room and began fondling her breast and vagina. Defendant then began kissing her, whereupon he

_____

[2] However, Joanne Burris testified that she cooked for her church revival in November, not January, and that she was never away from the home in January 1989.

turned her around and pushed her against a wall. While holding her arms for approximately five minutes, the child believed defendant penetrated her anus with his penis.[3]

Complainant testified to a second similar sexual assault by defendant that allegedly occurred the next morning as she was cleaning her room. She stated that defendant approached her and again began fondling her breasts and vagina while trying to kiss her. After defendant turned the victim and forced her against a wall, she believed that defendant again penetrated her anus with his penis.[4]

The victim then testified to a third act of anal penetration by defendant that allegedly occurred the next day under similar circumstances. While the child was folding clothes in the dining room, defendant approached her, began fondling her breasts and vagina, then forced her against a wall. She testified that she then felt what she believed to be defendant's penis penetrate her anus.[5]

[3] On cross-examination with respect to this incident, the victim admitted that she was "not sure" whether there was actual penetration and acknowledged that she did not feel any pain during the alleged penetration. Also, on cross-examination, defense counsel attempted to impeach the victim's testimony with a prior inconsistent statement to police in which she stated that this incident occurred after defendant pushed her into her *bedroom* and held her against a wall.

[4] On cross-examination, defense counsel elicited testimony from the victim to the effect that she was again unsure whether defendant actually penetrated her anus on this occasion. Defense counsel also used the victim's preliminary examination testimony in an attempt to impeach her testimony on direct examination that she locked her bedroom door after the second assault. At the preliminary examination, Young testified that the lock on her bedroom door did not work.

[5] In addition to these alleged acts of anal penetration, complainant testified that on the following day after dinner, she went into the alley behind her home to feed the dogs. As she attempted to reenter the home, defendant stopped her and again began kissing the child while fondling her chest and vagina. Complainant testified that as defendant was about to unbutton his pants, George White emerged from inside the home. When White asked what was going on, the child claimed that defendant ran.

Although these incidents allegedly occurred in
January 1989, complainant did not inform Joanne
Burris, her legal guardian, of the sexual assaults
until Easter Sunday in March 1989, because she
thought she would "get[ ] in trouble." When, later
that evening, Burris took the victim to the hospi-
tal, the examining physician found no medical
evidence of sexual penetration. Defendant denied
all the allegations, he did not testify, and the
defense rested without calling any witnesses.

At the close of proofs, defense counsel requested
the trial judge to give the following special instruc-
tion: "Members of the jury, you must be unani-
mous as to which specific act of penetration oc-
curred, if any, before you can find the Defendant
guilty of CSC in the first degree."

While declining to give the requested instruc-
tion, the trial court's instructions to the jury in-
cluded the following:

> The evidence in this case must convince you,
> beyond a reasonable doubt, that the crime oc-
> curred on or about January, 1989, within the City
> of Detroit. The Defendant is charged with the
> crime of CSC in the first degree. The Defendant
> pleads not guilty to this charge. To establish this
> charge, the Prosecution must prove each of the
> following elements beyond a reasonable doubt:
>
> First, that the Defendant, Ricky Cooks, engaged
> in a . . . specific sexual act which involves some

Complainant stated that she and White then went inside, where
White told the child that he had been looking out the kitchen window
and wanted to know what had happened. She allegedly told White
that defendant started kissing her and feeling her "chest and stuff."
When defendant later came into the kitchen, White purportedly
confronted him regarding the incident.

George White also testified at defendant's trial. He recalled seeing
defendant and the victim behind the house in January, but testified
that when he asked the child what they were doing, she stated that
defendant "wasn't doing anything."

actual entry into the anal opening of [the complainant's] body.

It is alleged . . . that the sexual act was committed by a penetration of the Complainant['s] . . . body by the Defendant, Ricky Cooks' penis. Any such entry into the anal opening is enough.

The court explained the elements of several lesser offenses, including second-degree criminal sexual conduct,[6] and then instructed the jury:

If you all have agreed upon one verdict, your foreperson should mark that verdict.

* * *

A verdict in a criminal case must be unanimous. In order to return a verdict, it is necessary that each of you agree upon that verdict.

The jury found defendant guilty of second-degree criminal sexual conduct. In an unpublished per curiam opinion,[7] the Court of Appeals reversed the conviction, citing *People v Yarger,* 193 Mich App 532, 537; 485 NW2d 119 (1992).

Thereafter, we granted the prosecutor's application for leave to appeal, "limited to whether the Detroit Recorder's Court failed to instruct the jury properly with regard to its obligation to render a unanimous verdict." 444 Mich 875 (1993).

---

[6] MCL 750.520c; MSA 28.788(3). While a charge of first-degree criminal sexual conduct requires proof of sexual penetration, the prosecutor need show only that the accused engaged in sexual contact with another person in order to prove second-degree criminal sexual conduct. MCL 750.520a(k); MSA 28.788(1)(k) provides:

"Sexual contact" includes the intentional touching of the victim's or actor's intimate parts or the intentional touching of the clothing covering the immediate area of the victim's or actor's intimate parts, if that intentional touching can reasonably be construed as being for the purpose of sexual arousal or gratification.

[7] Issued April 7, 1993 (Docket No. 126607).

II

While the Sixth Amendment of the federal constitution includes the right of an accused to a unanimous verdict in federal criminal prosecutions, see *Andres v United States,* 333 US 740; 68 S Ct 880; 92 L Ed 1055 (1948),[8] the United States Supreme Court has held that the Fourteenth Amendment does not mandate unanimous verdicts for convictions in noncapital criminal prosecutions in state courts. *Johnson v Louisiana,* 406 US 356; 92 S Ct 1620; 32 L Ed 2d 152 (1972); *Apodaca v Oregon,* 406 US 404; 92 S Ct 1628; 32 L Ed 2d 184 (1972). Thus, the right to a unanimous jury verdict in noncapital state criminal proceedings must be grounded in state law.

At common law, civil as well as criminal defendants were entitled to unanimous jury verdicts. See *McRae v Grand Rapids, L & D R Co,* 93 Mich 399; 53 NW 561 (1892).[9] This right was preserved by the ratifiers of the original Michigan Constitution,[10] and the current version of the state consti-

---

[8] See also FR Crim P 31(a): "The verdict shall be unanimous."

[9]   [T]he right of trial by a jury of 12 men became fixed centuries ago in the common law, and unanimity of verdict became requisite, until . . . this right came to be regarded as the great bulwark of the liberty of the citizen. Whether charged with an offense against the commonwealth, or in a controversy with another, the right could always be invoked. . . . This was the sense in which the common-law jury was understood,—a jury of 12, whose verdict must be unanimous. [*McRae, supra* at 401.]

[10] "The right of trial by jury shall remain inviolate." Const 1835, art 1, § 9. As Justice Cooley stated in *Swart v Kimball,* 43 Mich 443, 448; 5 NW 635 (1880):

The Constitution of the State provides that "The right of trial by jury shall remain . . . ." Article vi. § 27. The right is to *remain.* What right? Plainly the right as it existed before; the right to a trial by jury as it had become known to the previous jurisprudence of the State. [Emphasis in original.]

tution maintains the unanimity requirement, albeit in criminal prosecutions only.[11]

In order to protect a defendant's right to a unanimous verdict, it is the duty of the trial court to properly instruct the jury regarding the unanimity requirement. See, generally, *People v Liggett*, 378 Mich 706, 714; 148 NW2d 784 (1967) ("Defendant has a right to have a properly instructed jury pass upon the evidence"). In this case, we must determine whether a general unanimity instruction to the jury was adequate in light of the pattern of conduct offered as evidence of a single charged offense.

## III

In finding that the trial court erred in this case, and that reversal was required, the Court of Appeals relied exclusively on *Yarger, supra*, and reasoned:

> Error occurred because the jury was not instructed that it must unanimously agree on which of the separate act(s) was proven beyond a reasonable doubt.
>
> *  *  *
>
> Under *Yarger*, defendant is entitled to a unanimity instruction. He asked for one to be given, but it was not given. If *Yarger*'s holding has any

---

See also *McRae, supra* at 405 ("[T]his part of the Constitution [article 6, § 27], providing that 'the right of trial by jury shall remain,' means the right as it existed at the common law, which was well understood in the previous jurisprudence of the State . . . . This right was a trial by a jury of 12 good men and true, whose determination must be unanimous . . .").

[11] Const 1963, art 1, § 14 provides: "The right of trial by jury shall remain, but shall be waived in all civil cases unless demanded by one of the parties in the manner prescribed by law. In all civil cases tried by 12 jurors a verdict shall be received when 10 jurors agree."

Likewise, the Michigan Court Rules pertaining to criminal cases provide: "A jury verdict must be unanimous." MCR 6.410(B).

meaning—and the [*People v Van Dorsten,* 441
Mich 540, 543; 494 NW2d 737 (1993)] Court specifi-
cally declined to approve or disapprove *Yarger*—it
must say that the failure to give a unanimity
instruction is not always harmless.

    Accordingly, we hold *Van Dorsten* to its facts
and follow *Yarger* here to reverse.[12]

Defendant agrees with the panel's application of
*Yarger,* and points to the decisions in *People v
Jenness,* 5 Mich 305 (1858), and *People v Pottruff,*
116 Mich App 367; 323 NW2d 402 (1982), as addi-
tional support for an affirmance of the Court of
Appeals. We disagree.

After considering the arguments presented in
this appeal and carefully reviewing the relevant
federal and state authority available, we reach the
conclusion that a specific unanimity instruction is
not required in *all* cases in which more than one
act is presented as evidence of the actus reus of a
single criminal offense. The critical inquiry is
whether either party has presented evidence that
*materially* distinguishes any of the alleged multi-
ple acts from the others.[13] In other words, where
materially identical evidence is presented with

───────

[12] In *People v Van Dorsten,* the defendant did not request a specific
unanimity instruction, nor did he object to the instruction given and,
therefore, failed to preserve the issue for appellate review. Because
the "number or specific identification of acts of sexual penetration
was not in dispute," this Court found no manifest injustice in affirm-
ing the defendant's conviction and expressly declined to review the
merit of the *Yarger* decision. *Id.* at 545.

[13] See, e.g., comment, *Right to jury unanimity on material fact
issues:* United States v Gipson [553 F2d 453 (CA 5, 1977)], 91 Harv
L R 499, 501-502 (1977):

    It is not always clear where to draw the line dividing more
    general, "material" fact issues, on which the jury properly
    must be unanimous in order to convict, from more specific,
    "immaterial" issues, on which jurors may disagree without
    foreclosing the possibility of an acceptable guilty verdict.

respect to each act, and there is no juror confusion, a general unanimity instruction will suffice.

In this regard, *Yarger, Jenness,* and *Pottruff* are distinguishable from the case at bar. Whereas at least one of the alternative alleged acts in *Yarger, Jenness,* and *Pottruff* were supported or rebutted by a materially distinct piece of evidence, the evidence presented against defendant here was materially identical with regard to all three of the alleged acts of penetration. As indicated below, we find this distinction to be dispositive.

A

The decision in *United States v Gipson,* 553 F2d 453 (CA 5, 1977), is considered a seminal ruling regarding the need for a specific unanimity instruction when evidence of multiple acts by a defendant are placed before a jury to support a single charged offense.[14] There, the United States Court of Appeals for the Fifth Circuit reversed the defendant's conviction of "selling or receiving a stolen vehicle moving in interstate commerce, in violation of 18 USC 2313," on the ground that an improper jury instruction abridged the defendant's right to a unanimous jury verdict.[15] *Id.* at 455.

The court explained that the prohibited acts in

[14] See, e.g., 3 LaFave & Israel, Criminal Procedure, § 23.7(f), pp 50-52; 3 Cook, Constitutional Rights of the Accused (2d ed), § 17:3, pp 47-51; comment, n 13 *supra.*

[15] Among other evidence adduced at Gipson's trial, a witness testified that he heard a vehicle enter the driveway adjacent to his home one morning and noticed Gipson walking away from the car. The vehicle was later identified as an automobile that had been stolen the previous night. After the police established surveillance of the car, Gipson was seen "walking around the car and taking something out of the stolen car's glove compartment." *Id.* at 455. During their surveillance, the police also observed two men examining the vehicle. One of the men later testified at Gipson's trial that he and his acquaintance inspected the automobile because his acquaintance's friend was attempting to sell it. However, the witness was unable to positively identify Gipson at trial as his acquaintance's friend. When

question constituted "two distinct conceptual groupings; the first consisting of receiving, concealing, and storing, and the second comprised of bartering, selling, and disposing." *Id.* at 458. The court then opined:

> [T]he two conceptual groupings are sufficiently different so that a jury finding of the actus reus . . . would not be "unanimous" if some of the jurors thought the defendant committed only an act in the first conceptual grouping while others believed he committed an act only in the second. [*Id.*]

Because the challenged instruction did not separate the distinct acts of the "housing of stolen vehicles" versus the "marketing of stolen vehicles" in the minds of the jurors, the panel reversed:

> The . . . instruction authorized the jury to return a guilty verdict despite the fact that some jurors may have believed that Gipson engaged in conduct only characterizable as receiving, concealing, or storing while other jurors were convinced that he committed acts only constituting bartering, selling, or disposing. Thus, . . . the jury was permitted to convict Gipson even though there may have been significant disagreement among the jurors as to what he did. [*Id.* at 458-459.]

Recently, the United States Supreme Court addressed a somewhat related question in *Schad v Arizona,* 501 US 624; 111 S Ct 2491; 115 L Ed 2d 555 (1991), in the context of determining the constitutionality of criminal statutes that provide alternative means of defining a criminal offense,

Gipson was arrested two weeks after the morning in question, he had in his possession a set of keys that fit the stolen automobile.

i.e., multitheory statutes.[16] The *Schad* Court affirmed the defendant's murder conviction and, in the process, rejected a constitutional attack against an Arizona statute that alternatively defined the mens rea of first-degree murder as "murder which is . . . wilful, deliberate or premeditated . . . or which is committed . . . in the perpetration of, or attempt to perpetrate . . . robbery." 501 US 628, n 1.

In *Schad,* the defendant argued in the Supreme Court that the trial court's instruction, which "did not require the jury to agree on one of the alternative theories of premeditated and felony murder," deprived him of his constitutional right to a unanimous jury verdict. 501 US 630. Because the jury in the defendant's trial agreed unanimously "that [the defendant] murdered either with premeditation or in the course of committing a robbery," *id.,* the *Schad* Court framed the issue in the following manner: "whether it was constitutionally acceptable to permit the jurors to reach one verdict based on [sic] any combination of the alternative findings." *Id.* The Court answered this question in the affirmative. 501 US 645-646.

Although the "conceptually distinct" *Gipson* test was not utilized by the Supreme Court in *Schad,*

---

[16] The issue raised in *Schad* is analytically distinct from the question presented here. In this appeal, we must determine whether the trial court's general unanimity instruction sufficiently protected defendant's right to a unanimous verdict, in light of the allegations of separate acts by the defendant, each of which would factually satisfy the elements of the charged offense. On the other hand, the task before the United States Supreme Court in *Schad* was to examine the extent to which a statute could constitutionally define alternative means of committing a single criminal offense. See also *People v Johnson,* 187 Mich App 621, 629-630; 468 NW2d 307 (1991), in which the Court stated that "[w]hen a statute lists alternative means of committing an offense which in and of themselves do not constitute separate and distinct offenses, jury unanimity is not required with regard to the alternate theory" (holding that juror unanimity was not required regarding the three alternative definitions of malice necessary for a murder conviction).

its application to the issue now before us by other federal courts has produced an analytical framework that we find instructive.

For example, in *United States v Duncan,* 850 F2d 1104 (CA 6, 1988), cert den sub nom *Downing v United States,* 493 US 1025 (1990), the government offered two unrelated false statements allegedly made by the defendant, "that $115,000 of income received was a capital gain rather than ordinary income, and that [the defendant] had paid $8,800 in interest when he had not," as evidence of a single unlawful tax return. *Id.* at 1106. Relying on *Gipson,* the *Duncan* panel reversed the defendant's conviction:

> [T]he jury in this case needed to agree on the willful falsity of one factually distinct false statement because the statements are "conceptually distinct." Although both the interest deduction and the income characterization arose from the same transaction, the circumstances of their formulation and the proof bearing upon their willful falsity were distinct. . . . When distinct proof is required to establish distinct affirmative acts as elements of an offense, specific unanimity is necessary. [*Id.* at 1113.][17]

[17] The *Duncan* panel went on to note that even where specific unanimity is necessary, a general instruction on unanimity will suffice

> unless under the count in question: (1) the nature of the evidence is exceptionally complex or the alternative specifications are contradictory or only marginally related to each other; or (2) there is a variance between indictment and proof at trial; or (3) there is tangible indication of jury confusion, as when the jury has asked questions or the court has given regular or supplementary instructions that create a significant risk of nonunanimity. [*Id.* at 1114.]

See also *United States v Echeverry,* 698 F2d 375 (CA 9, 1983), modified 719 F2d 974, 975 (CA 9, 1983) ("When it appears . . . that *there is a genuine possibility of jury confusion or that a conviction may occur as the result of different jurors concluding that the*

On the other hand, where the government has presented evidence of a series of materially indistinguishable acts, each of which would factually satisfy the actus reus element of the alleged criminal offense, numerous federal courts have declined to require a specific unanimity instruction. In *United States v Ferris,* 719 F2d 1405, 1406 (CA 9, 1983), a case on which the prosecutor here relies, the defendant was convicted of one count of possession of controlled substances with intent to distribute. Because the prosecutor presented evidence of "various acts of possession" that allegedly occurred between November 20, 1980, and January 29, 1981, the defendant argued on appeal that

> the trial court deprived him of his constitutional right to a unanimous verdict by declining a proferred [sic] instruction that the jury must be in unanimous agreement on the precise act of possession with intent to distribute as alleged in Count i. [*Id.*]

The United States Court of Appeals for the Ninth Circuit disagreed and affirmed the defendant's conviction. *Id.* at 1407. The court distinguished *Gipson, supra,* and noted:

> In the case before us, the various acts indicating knowing possession were not inconsistent with each other; and even if one set of jurors might have focused on one part of the transaction while another set focused upon a different part, it does

---

*defendant committed different acts,* the general unanimity instruction does not suffice") (emphasis added), *United States v Payseno,* 782 F2d 832, 837 (CA 9, 1986) (a general instruction was insufficient where three acts of extortion, directed at separate victims at different times and locations, created "uncertainty and confusion regarding the basis for the conviction"), and *United States v Beros,* 833 F2d 455 (CA 3, 1987).

not follow that either set of jurors were in disagreement with the other. [*Id.*][18]

Similarly, in *United States v Sutherland,* 656 F2d 1181 (CA 5, 1981), cert den 455 US 949 (1982), three codefendants challenged their convictions of conspiracy to violate the federal Racketeer Influenced and Corrupt Organization Act, 18 USC 1962(c), arguing, inter alia, "that the [trial] court erroneously refused a requested instruction that required the jury to be unanimous as to the same overt acts that formed the basis of their verdict." *Id.* at 1202. Noting that certain acts " 'are sufficiently analogous to permit a jury finding of the actus reus element of the offense to be deemed "unanimous" despite differences among the jurors as to which of the . . . acts the defendant committed,' " *id.* at 1202 (quoting *Gipson, supra* at 458), the Court affirmed the defendants' convictions:

> [T]he jury need not specifically have considered and agreed as to which of a large number of potential overt acts of bribery were established by the government. These acts were not distinguished in any significant respect and the evidence as to each is remarkably similar. Therefore this series of alleged acts comprises one "conceptual group" and the jury need not have unanimously agreed as to which was proven. [*Id.*][19]

---

[18] See also *Vitello v United States,* 425 F2d 416, 419 (CA 9, 1970), cert den 400 US 822 (1970) (in a pre-*Gipson* case, the defendant's conviction of perjury was affirmed despite the fact that the trial court "failed to instruct the jury that all twelve jurors must unanimously agree upon at least one of the [three] statements as charged in the indictment").

[19] In addition to *Ferris* and *Sutherland,* other federal appellate courts have ruled that a specific unanimity instruction is unnecessary where the government presents a series of similar acts as evidence of a single criminal offense. See, e.g., *United States v Schiff,* 801 F2d 108, 115 (CA 2, 1986), cert den 480 US 945 (1987) (general unanimity

In the light of *Gipson* and its progeny, it appears that federal trial courts must give a specific unanimity instruction to the jury if 1) the alternative acts presented as evidence are conceptually distinct or there are distinct proofs regarding each alternative, or 2) other factors are present that create a genuine possibility of juror confusion or disagreement. Where the government offers a series of similar acts as proof of the actus reus and there is no indication of juror confusion or disagreement, the general unanimity instruction is deemed sufficient. *Ferris, Sutherland, Duncan.*

### B

The rule that a specific unanimity instruction is unnecessary when the government presents materially identical evidence to support each alleged act by a defendant is also recognized in state courts in the context of multiple incidents of sexual assault. For example, the Connecticut Supreme Court has adopted a "continuing offense" exception to the need for a specific unanimity instruc-

charge found sufficient where "the alleged acts were closely inter-related and carried out by a single individual"); *United States v Frazin,* 780 F2d 1461, 1468 (CA 9, 1986), cert den 479 US 844 (1986) (a general unanimity instruction was sufficient in a mail and wire fraud prosecution in which there existed evidence of misrepresentations to numerous investors, in light of the rule that "a specific instruction that the jury must agree on a particular set of facts is required *only* where it appears that a conviction might rest upon different jurors having found the existence of different facts . . . . That situation arises where the complex nature of the evidence, a discrepancy between the evidence and the indictment, or some other particular factor creates a genuine possibility of juror confusion"); and *United States v Natelli,* 527 F2d 311, 324 (CA 2, 1975), cert den 425 US 934 (1976) (where the government offered two statements as evidence of an alleged falsely prepared proxy statement, the court found no error in the trial court's refusal to instruct the jurors that "they must be unanimous on which, if either, of the two specifications had been proven materially false"). See also *Duncan, supra* at 1111 ("Sometimes alternative factual specifications are so closely related that a jury need *not* be unanimous as to which factual predicate or specification supports the defendant's guilt").

tion when alternative acts are presented as evidence of a single criminal offense.[20] In *State v Spigarolo*, 210 Conn 359, 389; 556 A2d 112 (1989), the prosecution alleged in two counts of an information that the defendant unlawfully committed "certain 'acts' likely to impair the health or morals of the victims." However, the prosecution "identified six separate acts specifying the manner in which the defendant committed the offense." ·

On the appeal of his conviction, the defendant argued that he was "denied . . . his constitutional right to a unanimous verdict,"[21] *id.* at 363, because the trial court instructed the jury that "it is necessary that the State prove that only one of those acts [was] committed by the defendant." *Id.* at 389. The Connecticut Supreme Court observed:

> "Where a trial court charges a jury that the commission of any one of several alternative acts would subject a defendant to criminal liability, a unanimity charge on a specific act is required only if two conditions are met: (1) the alternative acts are conceptually distinct from each other; and (2) the state has presented supporting evidence on each alternative act." [*Id.* at 389 (quoting *State v Bailey*, 209 Conn 322, 334; 551 A2d 1206 [1988]).]

Applying this standard to the record before it,[22]

[20] See also Trubitt, *Patchwork verdicts, different-jurors verdicts, and American jury theory: Whether verdicts are invalidated by juror disagreement on issues*, 36 Okla L R 473, 537 (1983) ("Where several instances of conduct clearly make up part of a 'continuing offense' or general scheme or plan, . . . a patchwork verdict is proper").

[21] The Connecticut Constitution provides, in pertinent part: "The right of trial by jury shall remain inviolate . . . ." Conn Const 1965, art 4, § 19. We note that this is the identical language used by the framers in the original Michigan Constitution. See n 10. The term "inviolate" has since been removed from this provision of the Michigan Constitution. See Const 1963, art 1, § 14.

[22] The evidence indicated that the defendant engaged in numerous sexual activities with his girlfriend's children at their apartment

the *Spigarolo* court opined that a specific unanimity instruction was unnecessary and affirmed the defendant's conviction:

> The six specific acts . . . involved subjecting the victims to either active or passive participation in sexual activity . . . . Because the state was unable to specify with greater precision the times of the alleged incidents, it necessarily proceeded under a theory that the defendant's conduct was in the nature of a continuing offense. . . . Under these circumstances, the acts specified in the counts were not conceptually distinct within the meaning of *Gipson*. [*Id*. at 391-392.][23]

The California courts have taken a similar approach.[24] In a case strikingly similar to the instant appeal, the defendant was convicted of "committing a lewd act upon a child on and between March 1, 1983, and May 31, 1983." *People v Winkle*, 206 Cal App 3d 822, 824; 253 Cal Rptr 726 (1988). The victim, who was six years old at the time of the alleged events, testified that she lived

between August and December of 1984. However, various statements provided by the children "were at times incomplete and inconsistent, and on one occasion in December, 1985, the [female] victim . . . recanted previous statements and said that no sexual activity between herself and the defendant had taken place." *Id*. at 363. The prosecutor also presented medical evidence that a December 1984 examination of the female revealed the presence of gonorrhea in her throat.

[23] See also *State v Mancinone*, 15 Conn App 251, 279; 545 A2d 1131 (1988), app den 209 Conn 818 (1988), cert den 489 US 1017 (1989) (a case on which the *Spigarolo* court relied in which a specific unanimity instruction was found not to be required, in part because, although the state presented evidence that the defendant furnished alcohol and marijuana to minors on numerous occasions, "[t]he jury's verdict must be seen as unanimous with regard to the single concept of providing illegal substances to the victims").

[24] Like Michigan and Connecticut, the California Constitution requires unanimous jury verdicts in criminal prosecutions: "Trial by jury is an inviolate right and shall be secured to all, but in a civil cause three-fourths of the jury may render a verdict." Cal Const 1974, art 1, § 16.

with her defendant uncle and his family during this period and claimed that he put his penis inside her vagina "more than once a week." She stated that these acts occurred when she and her uncle "were home alone, 'sometimes in the bathroom and sometimes in the bedroom,'" and that the acts also occurred in the bathroom at the defendant's workplace. *Id.*

On appeal, the defendant argued that "the trial court erred in failing to instruct the jury that it must unanimously agree on the underlying act forming the basis of a finding of guilt." *Id.* at 825. The court disagreed and affirmed.

After acknowledging the general applicability of a California standard jury instruction[25] to cases in which the information charges a single criminal offense, but evidence of multiple acts by defendant is produced at trial, the *Winkle* court noted:

> [T]here is a "continuous conduct exception" to the need for a unanimity instruction.
>
> * * *
>
> The continuous conduct exception occurs in two circumstances—when the two offenses are so closely connected in time that they form part of one transaction or when the offense consists of a continuous course of conduct. [*Id.* at 826.]

The court concluded that "because the victim was of a tender age at the time of the acts of molestation and because she testified about repeated incidents of the same act of sexual molesta-

---

[25] "The defendant is charged with the offense of _____. He may be found guilty if the proof shows beyond a reasonable doubt that he committed any one or more of such acts, but in order to find the defendant guilty, all the jurors must agree that he committed the same act or acts." [*Id.* at 826, n 4 (quoting CALJIC No. 17.01 [4th ed 1979]).]

tion, a unanimity instruction was unnecessary."
*Id.* at 828.[26]

Similarly, in *People v Deletto,* 147 Cal App 3d
458, 462; 195 Cal Rptr 233 (1983), the defendant
was charged with "oral copulation with a person
under 14 years of age and 10 years younger than
[the defendant]." At trial, the victim testified that
"(1) defendant made oral contact with her genital
area, and (2) defendant placed his penis in her
mouth and ejaculated . . . during the summer of
1980 at the [same] residence[.]" *Id.* at 465.

After reviewing the evidence, the *Deletto* court
stated:

> This is not a case in which different witnesses
> testified as to one incident but not the other or
> where different items of real evidence were intro-
> duced to prove one act but not the other, so that
> the jury might have distinguished between the
> credibility of different witnesses or the weight to
> be given various items of real evidence.
>
>        \*    \*    \*
>
> The defense similarly provided the jury with no
> evidence that focused on one act but not the other.
> [*Id.* at 466-467.]

Therefore, the court concluded that a unanimity
instruction was not necessary because "neither

---

[26] The court distinguished its decision from that in *People v Gordon,*
165 Cal App 3d 839; 212 Cal Rptr 174 (1985), wherein "a child
testified to an attempted act of sodomy for which no date was given
and to a second act which occurred during a camping trip, . . . [but
another] witness, who had accompanied the victim and the defendant
on the camping trip, in essence testified that the defendant did not
have the opportunity to be alone with the victim." *Id.* at 828-829. The
*Gordon* court reversed the defendant's conviction as a result of the
failure to give the specific unanimity instruction, " '[because] some of
the jurors may have believed the lack of opportunity defense to the
second act, and other jurors not, and . . . some jurors may have
believed there was penetration with respect to the first act of sodomy
but not the second, and others not . . . .' " *Id.* at 829 (quoting *Gordon*
at 856).

defense evidence nor defense argument suggested even remotely to the jury that they could somehow distinguish between the two acts . . . testified to by the minor." *Id.* at 468.[27]

C

We are persuaded by the foregoing federal and state authority that if alternative acts allegedly committed by defendant are presented by the state as evidence of the actus reus element of the charged offense, a general instruction to the jury that its decision must be unanimous will be adequate unless 1) the alternative acts are materially distinct (where the acts themselves are conceptually distinct or where either party has offered materially distinct proofs regarding one of the alternatives), or 2) there is reason to believe the jurors might be confused or disagree about the factual basis of defendant's guilt.[28] Against this

[27] See also *People v Moore*, 211 Cal App 3d 1400, 1415-1416; 260 Cal Rptr 134 (1989) (in affirming the defendant's conviction despite the trial court's failure to instruct the jury that, inter alia, "all jurors must agree that [the defendant] committed the same act or acts" when alternative acts are offered as evidence, the court opined that "where there is no reasonable basis, by way of evidence or argument, upon which the jury could have distinguished the acts, there is no reason to suspect the verdict was not unanimous") (relying on *Deletto, supra,* and *People v Meyer,* 197 Cal App 3d 1307; 243 Cal Rptr 533 [1988]).

Most recently, *Winkle, Deletto,* and *Moore* were cited with approval by the California Supreme Court in *People v Jones,* 51 Cal 3d 294, 322; 270 Cal Rptr 611; 792 P2d 643 (1990) (affirming the defendant's conviction of four counts of lewd and lascivious acts where the victim testified about "frequent [once or twice each month] molestations by defendant, at five separate locations, consisting exclusively of oral copulation").

[28] We believe this approach is particularly apt in cases such as this one, where there is an allegation of a pattern of sexual penetrations committed against a child who may have difficulty remembering distinct facts that were peculiar to each alleged incident of sexual misconduct. Indeed, the court in *Winkle, supra,* not only held that a specific unanimity instruction was not required in these circumstances, it concluded that such an instruction should not be given:

backdrop, a clear distinction emerges between the decisions in *Yarger, Jenness,* and *Pottruff* (in which a specific unanimity instruction was mandated) and the case at bar.

In *Yarger,* the defendant was charged with one count of third-degree criminal sexual conduct.[29] At trial, the prosecution presented evidence of distinct types of penetration through testimony of the fifteen-year-old victim that she "consensually performed fellatio on defendant . . . after which defendant penetrated her vagina with his penis." *Id.* at 534. The defendant impeached the victim's testimony in general with "evidence of prior false accusations of rape and her earlier denials that any impropriety had occurred between them." *Id.* In addition, the defense specifically impeached the allegation of vaginal penetration with the complainant's preliminary examination testimony at which she stated "that she and defendant 'had intercourse,' but that 'nothing went inside' her and that defendant placed his penis 'by' her vagina." *Id.*

The *Yarger* panel reversed the defendant's conviction and reasoned: "[A] possibility exists that, for example, six jurors were convinced that fellatio had occurred, but not intercourse, while the other six jurors held the opposite view." *Id.* at 537.

In *Jenness,* the defendant was charged with one

Since at trial no attempt was made to distinguish the acts[,] . . . the jury had no basis on which to distinguish between the acts about which [the victim] testified.

In a situation in which a very young child testifies about a series of similar molestations without identifying any specific dates, the unanimity instruction should not be given as it would be confusing for the jury to be given an instruction requiring them to agree on a specific act, when there is no specific act for them to agree upon. . . . Here, the jury's verdict indicates that the jurors believed [the victim], not [the defendant]. [*Id.* at 830.]

[29] MCL 750.520d; MSA 28.788(4).

count of committing incest with his niece. Al-
though the information listed February 24, 1858,
as the date of the alleged act, the niece testified at
trial that she had sexual intercourse with the
defendant "on the 17th day of January,
1858, . . . at her room in the Howard House, in
the city of Detroit." *Id.* at 307. She then testified
about "numerous acts of sexual intercourse be-
tween herself and [the defendant], at various
places within and without the said city of Detroit,
commencing in 1853." *Id.* at 308. The complain-
ant's parents corroborated her claim that she had
sexual intercourse with the defendant at various
places during the preceding five years by testifying
about "[a]cts of improper and indecent familiarity
between defendant and [the complainant], at vari-
ous times before the commission of the alleged act
at the Howard House." *Id.* at 308-309.

In its instructions to the jury, the trial court
stated:

> [T]hough the information alleges that the [defen-
> dant] had criminal connection with his niece,
> . . . in this city, on the 24th day of February, time
> and place are immaterial, and the jury may find
> him guilty, if from the evidence they believe that
> the act was not committed at the Howard House,
> but was committed in some other place in the city
> of Detroit, within the period of six years prior to
> the time of filing this information. [*Id.* at 312.]

Thus, the instruction allowed the jury to convict
the defendant without requiring unanimity on any
one of numerous acts of intercourse that allegedly
occurred within and without the City of Detroit
during a period of five years.

On appeal, this Court reversed the defendant's
conviction and explained:

This was subjecting the defendant to the risk of conviction upon a great number of acts, occurring at different times and places, against which he could not be expected to be prepared to defend; and yet an acquittal or conviction would be no bar to a future prosecution of any, except that at the Howard House. The jury can not be thus sent fishing for the charge which they are to try. [*Id.* at 328.]

In *Pottruff,* the defendant was charged with, and convicted of, one count of first-degree criminal sexual conduct. The five-year-old victim testified at trial that the defendant forced her to perform fellatio and to submit to vaginal intercourse. In support of the allegation of vaginal penetration, the prosecution also produced expert medical testimony.

Although the defendant apparently denied engaging in vaginal intercourse, he presented a separate defense with regard to the fellatio allegation. The defendant claimed that the zipper on his pants was broken and that the child "grabbed his penis and put it in her mouth . . . because she saw her mother do it and she thought she would like to be like her mother." *Pottruff, supra* at 370. The panel granted defendant a new trial on other grounds, but noted in dicta:

[S]ome jurors may have been convinced that defendant committed the act of fellatio while others may have been convinced only that vaginal penetration had occurred . . . . [T]his problem can be avoided on retrial either by charging defendant with separate counts or by instructing the jury that they must find unanimously that defendant committed either one or the other of the acts . . . . [*Id.* at 375-376.]

Unlike the proofs in *Yarger, Jenness,* and

*Pottruff,* the evidence offered in this case to support each of the alleged acts of penetration was materially identical, i.e., the complainant's equivocal testimony of an anal penetration,[30] occurring in the same house over an unspecified three-day period in January 1989, while only she and defendant were in the room. Thus, the multiple acts alleged by the prosecutor were tantamount to a continuous course of conduct.

Furthermore, unlike the defendants in *Yarger* and *Pottruff,* defendant here did not present a separate defense or offer materially distinct evidence of impeachment regarding any particular act.[31] He merely denied the existence of any inappropriate behavior. Thus, the sole task of the jury was to determine the credibility of the victim with respect to the pattern of alleged conduct. Because neither party presented materially distinct proofs regarding any of the alleged acts, the factual basis for the specific unanimity instruction

[30] Again, the child testified that, during all three incidents, she was unsure whether defendant actually penetrated her anus. Moreover, during closing argument, defense counsel focused on the fact that the complainant did not feel any pain during the three alleged incidents.

[31] The fact that defendant sought to show inconsistency in the complainant's testimony regarding the room in which the first incident occurred, or the operability of the door lock after the second incident, did not *materially* distinguish any of the separate acts. See, e.g., *Winkle, supra.*

Although it would be impossible to articulate all factual variations of the instant record in which the alternative acts would be materially distinct, a specific unanimity instruction would clearly be necessary if, in regard to only one of the alleged incidents, the complainant testified about the existence of significant pain or defendant offered an alibi witness to rebut the allegation. See also *Schad, supra:* "We would not permit . . . an indictment charging that the defendant assaulted either x on Tuesday or y on Wednesday . . . ." 501 US 651 (Scalia, J., concurring). Likewise, were defendant here charged in a one-count information with anal penetration of x on Tuesday or anal penetration of y on Wednesday and the trial court refused to instruct the jury that it must unanimously agree on which of the two acts defendant committed, we would not hesitate to overturn defendant's conviction to vindicate of his right to a unanimous verdict.

mandated in *Yarger, Jenness,* and *Pottruff* was nonexistent.

Like the prosecutors in *Spigarolo* and *Winkle* the prosecutor here was unable to specify in the information the precise dates of the alleged penetrations, other than "on or about Jan, 1989."[32] Unlike *Jenness,* the child victim then testified about identical incidents of anal penetration on three successive days, consistent with the charge in the information. Absent any indication of juror confusion or disagreement over the existence of any of the alternative acts, a specific unanimity instruction is not required on these facts.[33]

[32] Because the complainant could not identify the specific dates of the three alleged incidents, the prosecutor was forced to "proceed[ ] under a theory that the defendant's conduct was in the nature of a continuing offense." *Spigarolo, supra* at 391. We note that defendant actually benefited from this prosecutorial dilemma; had the complainant been able to specify with greater particularity the dates of the three alleged penetrations, the prosecutor might have charged defendant with *three* counts of first-degree criminal sexual conduct.

[33] Even if we were to conclude that the trial court erred in failing to give the requested specific unanimity instruction, reversal of the Court of Appeals decision would still be warranted. Because defendant was convicted of second-degree criminal sexual conduct, which does not require a showing of penetration, he was not prejudiced by failure to give the proffered instruction. Thus, any error that could be assigned to this omission did not result in a miscarriage of justice. See MCL 769.26; MSA 28.1096.

Moreover, because defendant did not object to the instructions given regarding second-degree criminal sexual conduct or request a specific unanimity instruction with respect to a particular act of sexual contact, he is not entitled to relief from conviction of this lesser included offense. "The failure of the court to instruct on any point of law shall not be ground for setting aside the verdict of the jury unless such instruction is requested by the accused." MCL 768.29; MSA 28.1052. When a defendant fails to preserve for appellate review an alleged instructional error, "[r]elief will be granted . . . only in cases of manifest injustice." *People v Kelly,* 423 Mich 261, 272; 378 NW2d 365 (1985). See also *People v Grant,* 445 Mich 535; 520 NW2d 123 (1994). In the case at bar, we find no manifest injustice in upholding defendant's second-degree criminal sexual conduct conviction for the same reasons articulated in *People v Van Dorsten, supra* at 545:

The number or specific identification of acts . . . was not in

IV

In conclusion, when the state offers evidence of multiple acts by a defendant, each of which would satisfy the actus reus element of a single charged offense, the trial court is required to instruct the jury that it must unanimously agree on the same specific act if the acts are materially distinct or if there is reason to believe the jurors may be confused or disagree about the factual basis of the defendant's guilt. When neither of these factors is present, as in the case at bar, a general instruction to the jury that its verdict must be unanimous does not deprive the defendant of his right to a unanimous verdict.[34]

The decision of the Court of Appeals is reversed.

CAVANAGH, C.J., and BRICKLEY, BOYLE, RILEY, and MALLETT, JJ., concurred with GRIFFIN, J.

LEVIN, J. (*dissenting*). I would affirm the decision of the Court of Appeals that the trial judge erred in refusing to instruct the jurors that they must be unanimous regarding which specific act of sexual penetration was committed by the defendant, Ricky Cooks.[1]

---

dispute . . . . The defendant's position was simply that there was no sexual assault committed. It was obvious to the participants in the trial that the verdict turned on whether the jury believed the testimony of the complainant . . . or found reasonable doubt that any sexual assault occurred, as claimed by the defendant. . . . In this context, the failure to give an instruction requiring unanimity on a particular act in no way impeded the defense or denied the defendant a fair trial.

[34] Although we hold in this case that a specific unanimity instruction was not required, we caution that in most cases, the evidence will be materially distinct regarding one ˙of the multiple acts allegedly committed by the defendant. See, e.g., *Yarger, Jenness,* and *Pottruff, supra.*

[1] Unpublished opinion per curiam, issued April 7, 1993 (Docket No. 126607).

I

Cooks was charged with sexual penetration of a person under the age of thirteen.[2] The complainant, ten years old at the time of trial, testified that Cooks sexually assaulted her on three separate occasions, on three successive days, involving fondling of her breasts and genitals, as well as either anal penetration or attempted anal penetration. Each incident, as described, would have supported a conviction. Although the complainant could not specify the exact date of the assaults, she was able to describe three separate incidents occurring on consecutive days. The child testified with reasonable specificity regarding the times, locations, and details of each separate assault.

The trial judge refused to instruct the jury in accordance with the following defense-proposed unanimity instruction:

"Members of the jury, you must be unanimous as to which specific act of penetration occurred, if any, before you can find the Defendant guilty of CSC in the first degree."

Cooks contends that without the proffered instruction the jury might return a split verdict, with some jurors finding that the assault occurred on day one, and others finding that the assault occurred on day two or three.[3]

The defense theory was that the complainant

---

[2] MCL 750.520b; MSA 28.788(2).

[3] The jury was provided with a general unanimity instruction. *Ante,* p 509. In response to defense argument on the possibility of a compromise, the court stated that it would instruct the jury that it must find that the defendant engaged in a "specific act" that involves some actual entry into the anal opening of the complainant's body. *Ante,* p 508.

The court did not, however, instruct the jury that it must agree on a specific act with respect to the lesser offenses, including second-

fabricated the charges to avoid punishment by her foster mother. The jury deliberated briefly before finding the defendant guilty of the lesser offense of CSC in the second degree.

II

State courts asked to decide the constitutional adequacy of an unanimity instruction in sexual molestation cases have adopted the approach set forth in *State v Petrich,* 101 Wash 2d 566; 683 P2d 173 (1984). In *Petrich,* the defendant was charged with one count of indecent liberties and one count of second-degree statutory rape. At trial, the thirteen-year-old complainant testified regarding numerous incidents of sexual contact over a twenty-one-month period. At the conclusion of the state's case, the defendant moved to compel the state to elect which offense was to be relied on for conviction, arguing that he was charged with only one count of each offense, but the evidence adduced at trial would support multiple charges. The court denied the motion, stating that the acts alleged were in the nature of a continuing offense.

The Supreme Court of Washington rejected the characterization of ongoing sexual abuse as a "continuing offense" because the evidence showed a series of separate and distinct acts.[4]

---

degree criminal sexual conduct, fourth-degree criminal sexual conduct, assault with intent to commit criminal sexual conduct involving penetration. The jury found Cooks guilty of criminal sexual conduct in the second degree.

[4] See also *People v Melendez,* 224 Cal App 3d 1420, 1429; 274 Cal Rptr 599 (1990). The continuous course of conduct exception to the requirement of a specific unanimity instruction must be narrowly drawn. The continuous conduct exception only applies to those offenses where the statute defining the crime may be interpreted as applying to an offense that may be continuous in nature, such as failure to provide, contributing to the delinquency of a minor, driving under the influence, concealing stolen property, and criminal acts of possession.

To determine whether one continuing offense may be charged, the facts must be evaluated in a commonsense manner. In the present case, each described incident occurred in a separate time frame and identifying place. The only connection between the incidents was that the victim was the same person; this is not enough to call the offense one transaction. [*Petrich, supra* at 571.]

Having determined that the allegations were separate and alternative "acts," the court proceeded to distinguish "alternate means" cases from "alternate acts" cases.

[W]hen the State alleges alternative means of committing a single criminal act, this court has approved instructions that, although requiring unanimity in the verdict, did not require a unanimous determination of which of several alternative means was actually used to commit the crime, so long as substantial evidence supported each alternative. [Citations omitted.]

. . . This is not an "alternative means" case. The State charged petitioner with one count each of statutory rape and indecent liberties, but proceeded at trial to present evidence of numerous separate criminal acts. Petitioner argues that when the evidence shows several incidents which

---

Multiple sex acts do not merge into a single continuing offense because the defendant can be convicted and punished for each separate act.

The lead opinion cites an earlier California decision, *People v Winkle,* 206 Cal App 3d 822; 253 Cal Rptr 726 (1988), *ante,* pp 521-522. *Winkle* did not apply the continuous course of conduct exception to uphold a conviction in the absence of a unanimity instruction. The victim's youth and the repeated incidents of the same act of molestation made the unanimity instruction unnecessary. The California Supreme Court disapproved of the rationale of *Winkle* in *People v Jones,* 51 Cal 3d 294; 270 Cal Rptr 611; 792 P2d 643 (1990).

The New York Court of Appeals rejected the continuing conduct exception to sexual abuse, because those crimes as defined in the Penal Law of New York "punish the performance of a single act." *People v Keindl,* 68 NY2d 410, 420-421; 509 NYS2d 790; 502 NE2d 577 (1986).

could form the basis of the one incident charged in the information, to ensure a unanimous verdict on the underlying crime, the State must tell the jury which act is relied on to convict. [*Id.* at 569-570.]

To guard against a compromise in a multiple acts case, the court set forth the following rule: When evidence introduced at trial indicates that several distinct criminal acts have been committed, and the defendant is charged with only one count of criminal conduct, jury unanimity must be protected in the following manner. The prosecutor may, in his discretion, elect the act upon which he will rely for conviction. Absent an election, the jury must be instructed that all twelve jurors must agree that the same underlying criminal act has been proven beyond a reasonable doubt, thereby assuring that a conviction rests upon a unanimous verdict based on one criminal act. *Id.* at 572.

In fashioning the unanimity rule, the court was attentive to the nature of criminal sexual conduct charges involving children.

These options [referring to the choice of prosecutorial election or a specific unanimity instruction] are allowed because, in the majority of cases in which this issue will arise, the charge will involve crimes against children. Multiple instances of criminal conduct with the same child victim is a frequent, if not the usual pattern. Note, *The Crime of Incest Against the Minor Child and the States' Statutory Responses,* 17 J Fam Law 93, 99 (1978-79). Whether the incidents are to be charged separately or brought as one charge is a decision within prosecutorial discretion. Many factors are weighed in making that decision, including the victim's ability to testify to specific times and places. Our decision in this case is not intended to hamper that discretion or encourage the bringing of multiple charges when, in the prosecutor's judg-

ment, they are not warranted. The criteria used to determine that only a single charge should be brought, may indicate that the election of one particular act for conviction is impractical. In such circumstances, defendant's right to a unanimous verdict will be protected with proper jury instructions. [*Petrich, supra* at 572-573.]

Alaska adopted the rule set forth in *Petrich* to guard the fundamental right to a unanimous verdict in a multiple acts case. *State v Covington,* 703 P2d 436 (Alas App, 1985).[5]

Arizona similarly requires the prosecutor to elect one act among several or to provide a specific unanimity instruction. *State v Schroeder,* 167 Ariz 47; 804 P2d 776 (1990).[6]

California and Colorado have formulated a different, but an equally protective, unanimity rule to assure valid and unanimous verdicts in multiple acts evidence sexual abuse prosecutions. In *People v Jones,* 51 Cal 3d 294; 270 Cal Rptr 611; 792 P2d 643 (1990), the child complainant testified about frequent oral copulation at five separate locations, supporting four counts of child molestation. The ten year old was unable to specify the exact time,

[5] The court of appeals reinstated the defendant's conviction of separate counts of lewd and lascivious acts and sexual assault. The complainant was wholly unable to distinguish the circumstances of one assault from another. On the basis of the record, the jury could not have reasonably accepted part of the complainant's story without accepting it in full. Therefore, the trial court's error in not requiring the state to elect among incidents or, alternatively, in failing to provide a curative instruction, did not appreciably affect the verdict. *State v Covington (On Rehearing),* 711 P2d 1183, 1185 (Alas App, 1985).

[6] Although the prosecutor failed to elect a single act on which to base a conviction, and a special unanimity instruction was given, any error was harmless. The complainant testified about seven incidents that occurred within several hours in the course of one evening. On the basis of the facts, the court deemed it irrelevant that the jury might have found that some, but not all, of the alleged acts had occurred, as long as it unanimously agreed that the child had been sexually abused that evening. *Id.* at 53.

place, or circumstances of the assaults occurring over a two-year period, typical of testimony offered in a molestation case. The jury was instructed that in order to convict the defendant of lewd conduct, the prosecution must prove beyond a reasonable doubt, and the jury must "unanimously agree on, 'the commission of the same specific act or acts constituting said crime within the time period alleged.' " *Id.* at 300.

In affirming the conviction, the Supreme Court of California stated:

> In [child molestation cases], although the jury may not be able to readily distinguish between various acts, it is certainly capable of unanimously agreeing that they took place in the number and manner described.
>
> \*     \*     \*
>
> In a case in which the evidence indicates the jurors might disagree as to the particular act defendant committed, the standard unanimity instruction should be given. [Citation omitted.] But when there is no reasonable likelihood of juror disagreement as to particular acts, and the only question is whether or not the defendant in fact committed *all* of them, the jury should be given a modified unanimity instruction which, in addition to allowing a conviction if the jurors unanimously agree on specific acts, also allows a conviction if the jury unanimously agrees the defendant committed *all* the acts described by the victim. [*Id.* at 321-322.]

The Supreme Court of Colorado, adopting the rule and rationale of *Jones,* recommended that when circumstances of a particular case indicate a likelihood of juror disagreement about which acts the defendant committed, special verdicts are advisable to provide additional assurance that a

verdict is supported by unanimous jury agreement. *Thomas v People,* 803 P2d 144, 154 (Colo, 1990).

The foregoing rules strike an appropriate balance between the needs of the state and the rights of a defendant. The state is not hindered in successfully and fairly prosecuting child sex abuse cases. In the event that it is impractical to elect one of many acts testified, the prosecutor can choose not to elect a particular act. If the prosecutor does not elect, the jury must be instructed that it must unanimously agree on which specific act supports the charged crime. Unless the court requires a specific unanimity instruction, there is no assurance that the jurors unanimously found that the prosecutor proved, beyond a reasonable doubt, every fact necessary to constitute the crime with which the defendant is charged. *In re Winship,* 397 US 358; 90 S Ct 1068; 25 L Ed 2d 368 (1970).

I disagree with the view that a specific unanimity instruction is required *only* when the various acts themselves are materially distinct. When the prosecution puts in evidence of separate and identifiably different instances of the same or similar criminal conduct, the court should be required to instruct the jury that it must unanimously agree on which of the several acts forms the basis of the conviction.

III

The premise of the majority is the decision of the United States Court of Appeals for the Fifth Circuit in *United States v Gipson,* 553 F2d 453 (CA 5, 1977), concerning the need for a specific unanimity instruction.[7] The majority view is derived from *Gipson* and its progeny. In *Gipson,* defendant

[7] *Ante,* p 513.

was convicted under a statute that criminalized a number of different and possibly unrelated acts, characterized by the court as two distinct conceptual groupings. *Gipson,* involving an assessment of guilt based on acts of a different nature, is analytically distinct from the issue in the instant case.

The instant case concerns evidence of repeated instances of the same criminal conduct offered to establish a single charge. The rule set forth in the majority opinion might be satisfactory and supported by federal law in appropriate cases; it is not applicable here and, most importantly, does not protect defendant's right to a unanimous verdict.

I would affirm the decision of the Court of Appeals.