*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLICATION
March 21, 2019

Plaintiff-Appellee,

v

No. 340272
Eaton Circuit Court
LC No. 2016-020296-FC

DAMON EARL WARNER,

Defendant-Appellant.

Before: SWARTZLE, P.J., and MARKEY and RONAYNE KRAUSE, JJ.

PER CURIAM.

Defendant appeals by right his jury trial conviction of second-degree criminal sexual conduct (CSC-II), MCL 750.520c. The jury could not reach a verdict on a charge of first-degree criminal sexual conduct (CSC-I), MCL 750.520b. Defendant was sentenced as a fourth-offense habitual offender, MCL 769.12, to 10 to 30 years' imprisonment. We reverse and remand for a new trial.

In Count 1 of the criminal complaint, defendant was charged with CSC-I for an incident involving his digital-vaginal penetration of his stepdaughter when she was 13 years old. In Count 2 of the criminal complaint defendant was charged with CSC-II for an incident involving sexual contact between defendant and his stepdaughter when she was also 13. The CSC-I charge was predicated on the theory that defendant came up behind the victim in the dining room of the family home, placed a hand down her pants, and inserted a finger into her vagina. The CSC-II charge was based on the theory that defendant entered the victim's bedroom while she was sitting on her bed, that he then pushed her down onto the bed, that he next pulled down her pants, and that defendant then pressed his penis against her vagina without insertion. According to the victim, the CSC-II assault occurred about two or three months before the CSC-I assault. They were two separate and distinct acts. Defendant testified on his own behalf, denying any inappropriate touching or contact.

The trial court instructed the jury that a "[v]erdict in a criminal case must be unanimous." The court further instructed the jurors that the two counts represented "separate crimes" and that they "must consider each crime separately in light of all of the evidence." The trial court, in

reviewing the elements of the offenses, instructed the jury that the CSC-I charge required proof of digital-genital penetration and that the CSC-II charge required proof of sexual contact with the victim's genital area. With respect to the CSC-I charge and during the general reading of the instructions, the trial court did not instruct the jury that it could also consider CSC-II as a lesser offense of CSC-I. The jury was provided a verdict form that gave them the option of finding defendant guilty or not guilty on the two separate counts; there was no indication on the verdict form that Count 1 pertained to the alleged sexual assault in the dining room or that Count 2 concerned the alleged sexual assault in the bedroom. Nor did the verdict form provide for any consideration of potential lesser offenses of the two charged crimes.

After 55 minutes of deliberations, the jury asked the trial court whether it could "only account the second living room incident to the first-degree criminal sexual conduct or [could it] account either incident to both first and second-degree." This question touched off a lengthy discussion between the trial court and the parties regarding the meaning of the question being posed by the jury. The trial court, in writing, then informed the jury as follows regarding its question, "I do not understand your question, please rephrase." In response, the jury submitted a revised note with two questions. The jury first asked, "Does Count 1 have to pertain to evidence in the dining room only?" The jury next asked, "Does Count 2 have to pertain to evidence in the bedroom only? Or, can count 1 *and* 2 pertain to the dining room?"[1] These questions set off a new round of discussions between the trial court and the parties, reflecting a great deal of confusion on how to respond. The parties and the trial court then came to an agreement that as to the first question, Count 1 (sexual penetration) had to pertain to evidence in the dining room only and that as to the second question, Count 2 (sexual contact) did not have to pertain to evidence in the bedroom only and that Count 1 and Count 2 could pertain to the dining room. These responses were conveyed to the jurors by written note. Effectively, the jury was instructed that it could find defendant guilty of CSC-II on the basis of the incident in the bedroom, consistent with the prosecution's theory regarding CSC-II and Count 2, as well as the incident in the dining room, which was not consistent with the prosecution's theory. Importantly, the jury was not instructed that with respect to any decision finding defendant guilty of CSC-II, all 12 of them had to reach that result on the basis of the same specific incident, either the bedroom incident or the dining room incident.

The jury subsequently indicated to the trial court that the jurors could not reach an agreement on the charges. The jury was given the deadlocked-jury instruction, M Crim JI 3.12, directing the jurors to continue deliberations in an effort to reach a verdict. Eventually, with respect to Count 1 and the CSC-I charge, the jury indicated on the verdict form that there was "no agreement." But in regard to Count 2 and the CSC-II charge, the jury found defendant guilty.

On appeal, defendant argues that trial counsel was ineffective for failing to request a specific unanimity instruction after the court informed the jury that it could convict defendant of

---

[1] We have emphasized the word "and" because the jury circled it in its note to the court.

CSC-II based on either of the two discrete incidents of sexual assault that were alleged in this case. We agree.

Whether counsel was ineffective presents a mixed question of fact and constitutional law, which we review, respectively, for clear error and de novo. *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). In *People v Carbin*, 463 Mich 590, 599-600; 623 NW2d 884 (2001), our Supreme Court addressed the basic principles governing a claim of ineffective assistance of counsel, observing:

> To justify reversal under either the federal or state constitutions, a convicted defendant must satisfy the two-part test articulated by the United States Supreme Court . . . . First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not performing as the counsel guaranteed by the Sixth Amendment. In so doing, the defendant must overcome a strong presumption that counsel's performance constituted sound trial strategy. Second, the defendant must show that the deficient performance prejudiced the defense. To demonstrate prejudice, the defendant must show the existence of a reasonable probability that, but for counsel's error, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. Because the defendant bears the burden of demonstrating both deficient performance and prejudice, the defendant necessarily bears the burden of establishing the factual predicate for his claim. [Citations and quotation marks omitted.]

An attorney's performance is deficient if the representation falls below an objective standard of reasonableness. *People v Toma*, 462 Mich 281, 302; 613 NW2d 694 (2000).

In *People v Gadomski*, 232 Mich App 24, 30; 592 NW2d 75 (1998), this Court addressed the requirement of jury unanimity, observing:

> Criminal defendants are guaranteed a unanimous jury verdict under the state constitution. Consequently, trial courts are required to give proper instructions regarding the unanimity requirement. In some circumstances, a general unanimity instruction . . . is not adequate to ensure a defendant's right to a unanimous jury verdict. For instance, the Michigan Supreme Court has held that when the prosecution offers evidence of multiple acts by a defendant, each of which would satisfy the actus reus element of a single charged offense, the trial court is required to instruct the jury that it must unanimously agree on the same specific act if the acts are materially distinct or if there is reason to believe the jurors may be confused or disagree about the factual basis of the defendant's guilt. [Citations omitted.]

CSC-II requires "sexual contact," MCL 750.520c. "Sexual contact" is defined as "the intentional touching of the victim's or actor's intimate parts or the intentional touching of the clothing covering the immediate area of the victim's or actor's intimate parts, if that intentional

touching can reasonably be construed as being for the purpose of sexual arousal or gratification . . . ," MCL 750.520a(q).

Here, as matters developed after the jury began its deliberations, the single CSC-II charge, which had been based on one particular act that was materially distinct and separate from the act that formed the basis of the CSC-I charge, morphed into a charge that could be established by either of those two acts, each of which could satisfy the actus reus element of the single CSC-II charge. This situation developed because of the trial court's responses to the jury's questions, upon which the parties fully agreed, yet a specific unanimity instruction was not given in conjunction with the court's responses.

The jury could not agree on whether defendant engaged in an act of sexual penetration in the dining room, but all twelve jurors found that defendant had sexual contact with the victim. However, it is impossible to discern what act or acts formed the basis of the CSC-II conviction. Perhaps all 12 jurors found defendant guilty of CSC-II predicated on the dining room incident, as there was evidence that that incident involved, at least in part, some sexual contact. Perhaps all 12 jurors found defendant guilty of CSC-II on the basis of the bedroom incident. If either of those two possibilities actually occurred, the unanimity requirement would have been satisfied.[2] But we cannot say with any confidence that there was unanimity on the CSC-II conviction *relative to the specific underlying act supporting that conviction*. And we cannot conclude so because the trial court did not give the jury a specific unanimity instruction on the CSC-II charge. Most important, defense counsel made no such request. Because both acts—the one in the bedroom and the separate and distinct act in the dining room—could have supported the CSC-II charge and conviction, it is certainly possible that some of the jurors based their verdict on the bedroom incident alone and some solely on the dining room incident. Indeed, the very fact that the jury asked whether the CSC-II charge could be based on the dining room incident suggested that at least some of the jurors were of the mindset that the dining room incident supported a CSC-II conviction.

Under these circumstances, defense counsel's failure to request a specific unanimity instruction constituted deficient performance, falling below an objective standard of reasonableness. The need to request the clarifying unanimity instruction was glaring, and we cannot think of any logical or strategic reason for not making it. Moreover, we simply cannot conclude that the deficient performance was harmless and did not prejudice defendant. The lack of a specific unanimity instruction is sufficient to undermine confidence in the outcome of the trial. *Carbin*, 463 Mich at 600. The jury's questions and its struggle to even render a verdict on the CSC-II charge revealed a difference of opinion and strongly suggested that there was no consensus and unanimity on what act or incident supported the CSC-II conviction. Under these facts, we find reversal is warranted.

Finally, we take a moment to respond to our dissenting colleague's position that the two acts, while physically distinct, were not materially distinct: The two acts were not conceptually

---

[2] It is also feasible that all 12 jurors found the commission of CSC-II relative to both acts or incidents.

-4-

different, nor did either party offer materially distinct proofs as to each act. In *People v Cooks*, 446 Mich 503, 524; 521 NW2d 275 (1994), our Supreme Court observed "that if alternative acts allegedly committed by defendant are presented by the state as evidence of the actus reus element of the charged offense, a general instruction to the jury that its decision must be unanimous will be adequate unless 1) the alternative acts are materially distinct (where the acts themselves are conceptually distinct or where either party has offered materially distinct proofs regarding one of the alternatives), or 2) there is reason to believe the jurors might be confused or disagree about the factual basis of defendant's guilt." We would first note that with respect to the latter *alternative* factor, we certainly believe under the circumstances discussed above that the jurors might have disagreed about the factual basis of defendant's guilt in regard to CSC-II. Indeed, given their questions to the court, we deem it likely that they did disagree.

As to whether the two acts were materially distinct, we note that physical distinctions are relevant. Contrary to the dissent's suggestion, the two acts were conceptually different, and the prosecution offered materially distinct proofs regarding the two acts. *Cooks*, upon which the dissent primarily relies, supports *our* view. In *Cooks*, the defendant was charged with one count of CSC-I based on anal intercourse, but the testimony referred to three incidents of such sexual penetration. The evidence revealed that on three consecutive days the defendant approached the minor victim while she was engaged in housekeeping chores. He kissed her while fondling her breasts and vagina, and then he forced her against a wall and penetrated her anus with his penis. The trial court gave the jury a general unanimity instruction, and the defendant appealed. *Cooks*, 446 Mich at 505-507.

The *Cooks* Court stated that "where materially identical evidence is presented with respect to each act, and there is no juror confusion, a general unanimity instruction will suffice." *Id.* at 512-513. In affirming the defendant's conviction, our Supreme Court held that, as distinguished from other cases where the alternative alleged acts "were supported or rebutted by a materially distinct piece of evidence, the evidence presented against defendant here was materially identical with regard to all three of the alleged acts of penetration." *Id.* at 513. Quite clearly, physical distinctions and similarities were relevant to the Court's analysis.

Here, as discussed earlier, the prosecution presented evidence that in regard to one of the acts, defendant came up behind the victim in the dining room of the family home, placed a hand down her pants, and inserted a finger into her vagina. And with respect to the other act, the prosecution presented evidence that defendant entered the victim's bedroom while she was sitting on her bed, that he then pushed her down onto the bed, that he next pulled down her pants, and that he then pressed his penis against her vagina without insertion. The two acts occurred months apart, took place in two different rooms, involved different prefatory conduct, and entailed two completely different types of sexual acts. The two acts were supported by materially distinct pieces of evidence offered by one of the parties—the prosecution. The facts in the instant case are not analogous to those presented in *Cooks*; they are not even close.

The dissent emphasizes that the trial court instructed the jurors that in order to return a verdict they had to agree "on *that* verdict." Therefore, according to the dissent, "the general unanimity instruction was proper and sufficient." We fail to see how the instruction minimized the danger that developed when the trial court, in response to questions posed by the jury, instructed the jurors that they could convict defendant of CSC-II based on either one of the two

acts without further instructing the jury that it had to be unanimous on the specific act underlying the verdict. Unanimity on the *verdict* is not the equivalent of unanimity on the verdict *and the underlying act supporting that verdict.* The jury in this case could have concluded that unanimously finding defendant guilty of CSC-II was all that was necessary even if some of the jurors reached that determination based solely on one of the acts and other jurors relied solely on the other act. In sum, we respectfully disagree with the dissent's reasoning and conclusion.

We reverse defendant's conviction and remand for a new trial. We do not retain jurisdiction.[3]

/s/ Brock A. Swartzle
/s/ Jane E. Markey

---

[3] In light of our ruling, we find it unnecessary to address defendant's additional claim of ineffective assistance of counsel and the sentencing issue.