*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

SHERRY SUZANNE DUNN,

Defendant-Appellant.

UNPUBLISHED
October 6, 2022

No. 356026
Berrien Circuit Court
LC No. 2019-015394-FH

Before: RICK, P.J., and BOONSTRA and O'BRIEN, JJ.

PER CURIAM.

Defendant appeals as of right her conviction following a jury trial of one count of embezzlement of a vulnerable adult in an amount greater than $1,000 and less than $20,000, MCL 750.174a(4)(a). The trial court sentenced defendant to 180 days' imprisonment and to pay restitution of $16,250. Because we conclude that defendant has established her claim of ineffective assistance of counsel, we vacate her conviction and remand for a new trial.

## I. FACTS

The victim in this matter was 87 years old at the time of the trial in 2019 and was suffering from dementia. Defendant and her husband, George Dunn, lived in the basement apartment of the victim's home. George eventually became the victim's power of attorney and was placed on the victim's bank account. The Department of Health and Human Services (DHHS) received a referral regarding the victim because his bank account was consistently overdrawn despite the fact that the victim should have had enough money to cover his expenses.

At some point, George and defendant separated, and George moved upstairs and lived with the victim in the main floor of the home. Defendant continued to live in the basement apartment and was supposed to be paying rent in the amount of $550 per month. George was supposed to be collecting the rent payments for the victim's rental properties and give the payments to the victim. The victim said that George did this initially, but then that faded away and "they" (presumably George and defendant) began to steal the money.

-1-

While he had the victim's power of attorney, George wrote four checks to defendant in the amounts of $250, $850, $220, and $100 from the victim's bank account. The victim testified that he never gave George permission to write himself or defendant checks. However, George testified that the victim gave him permission to write checks to defendant.

According to George and defendant, the $850 check was for a car loan for a woman named Debra Smith, another tenant of the victim. George testified that this check was made out to defendant because the victim did not know Smith at that time and did not trust Smith, so the victim requested that the check be made out to defendant so that defendant could give the money to Smith. At that time, Smith had been a tenant in the victim's other rental property for a couple of months. Smith testified that she later paid the $850 back to the victim.

For the $250 check, George testified that this check was for his and defendant's car insurance. However, defendant told a police officer that the check was to pay for the victim's car insurance. According to George, he had permission from the victim to write this check. George identified the signature on the back of the check as defendant's signature. George testified that this check was paid back to the victim in $100-a-month increments in cash.

George testified that the $220 check was a loan to defendant to pay defendant's electric bill. Again, George testified that the victim authorized him to write the check. George also said that this check was repaid in $100 cash installments to the victim. The victim did not recall giving permission to George to write the check to defendant or that he ever gave defendant any money.

George testified that the $100 check paid to defendant was compensation for defendant cleaning the victim's house, and that he had permission from the victim to write the check. The victim testified that defendant had helped him with making the beds, washing clothes, and other chores. The victim also testified that he gave defendant money for soap that she used when she helped him. However, defendant told a detective that the $100 check was for work she did for George.

George testified that defendant lived in the victim's basement apartment on-and-off in 2017 and 2018, and that he believed she paid rent every month. George told police officers that he collected money for rent payments and that he either deposited the money in the victim's account or gave the money to the victim. A police officer testified that there were some deposits in the victim's account for $550. A DHHS employee reviewed the victim's bank statements for August, September, and October 2018, and, although she was informed that rent was being paid in cash, she did not see any cash deposits into the account during those months. George testified that defendant initially paid her rent with money orders and later paid cash. When defendant paid with a money order, George went to the bank with the victim and deposited the money order. However, when defendant paid her rent in cash, he gave the cash to the victim or deposited it as requested by the victim.

At the conclusion of the jury trial, defendant moved for a directed verdict and argued that the prosecution had not established that defendant had obtained money from the victim through fraud, deceit, misrepresentation, coercion, or unjust enrichment. Defendant also argued that the amount in question was less than $1,000. The trial court denied the motion. The jury found defendant guilty. The trial court sentenced defendant as described earlier in this opinion.

Subsequently, defendant moved for a new trial and to vacate the order imposing court costs on defendant. In this motion and the supporting brief, defendant argued that defense counsel was ineffective for failing to request a specific unanimity jury instruction and that the court costs assessed against defendant must be vacated because the statute under which those costs were assessed, MCL 769.1k(1)(b)(*iii*), was unconstitutional.[1] The prosecution opposed this motion, arguing that a specific unanimity jury instruction was not required in this case and that defendant had failed to establish that the statute under which she was assessed court costs was unconstitutional. At the conclusion of the hearing, the trial court denied defendant's motion in its entirety. This appeal followed.

## II. ANALYSIS

Defendant first argues that the trial court erred when it did not provide the jury with a specific unanimity instruction. Alternatively, defendant argues that defense counsel was ineffective for failing to request a specific unanimity instruction. We conclude that defendant has established her claim of ineffective assistance of counsel and is entitled to a new trial.

## A. SPECIFIC UNANIMITY INSTRUCTION

"A defendant in a criminal trial is entitled to have a properly instructed jury consider the evidence against him or her." *People v Dobek*, 274 Mich App 58, 82; 732 NW2d 546 (2007). Criminal defendants have the right to a unanimous jury verdict. *People v Cooks*, 446 Mich 503, 510-511; 521 NW2d 275 (1994). "In order to protect a defendant's right to a unanimous verdict, it is the duty of the trial court to properly instruct the jury regarding the unanimity requirement." *Id*. at 511. Our Supreme Court has held that "when the state offers evidence of multiple acts by a defendant, each of which would satisfy the *actus reus* element of a single charged offense, the trial court is required to instruct the jury that it must unanimously agree on the same specific act if the acts are materially distinct or if there is reason to believe the jurors may be confused or disagree about the factual basis of the defendant's guilt." *Id*. at 530. "The critical inquiry is whether either party has presented evidence that *materially* distinguishes any of the alleged multiple acts from the others." *Id*. at 512. Moreover, a general unanimity instruction is not adequate where one party "has offered materially distinct proofs regarding one of the alternatives . . . ." *Id*. at 524.

In the instant case, the prosecution alleged that there were two acts that comprised defendant's crime: (1) the receipt of four checks from the victim's bank account, and (2) the failure to pay rent to the victim. Defendant provided separate explanations for each of the checks that she received and why her receipt of those checks did not constitute a crime. Defendant also alleged that she made all the required rent payments and that any of the rent payments that were not given to the victim were because of a failure by George. The trial court provided the jury with a general unanimity instruction, which stated that the jury's verdict must be unanimous.

---

[1] Defendant acknowledged that this Court's decision in *People v Johnson*, 336 Mich App 688, 691; 971 NW2d 692 (2021), which held that MCL 769.1k(1)(b)(*iii*) was not facially unconstitutional, was binding. However, defendant argued that *Johnson* was wrongly decided.

Under the Michigan Supreme Court's holding in *Cooks*, 446 Mich at 511-512, a specific unanimity instruction was required in this case. The prosecutor offered evidence of different acts that would satisfy the charged offense, and defendant provided different defenses for each of the four checks she received and denied that she failed to pay rent. Therefore, there is a possibility that some of the jurors believed that defendant embezzled money by receiving the four checks, but not by failing to make rent payments, while other jurors believed that defendant failed to make rent payments, but did not embezzle funds by way of the received checks. See *id*. at 524. This case is distinguishable from *Cooks*, 446 Mich at 528, where the defendant merely put forth a blanket denial of all inappropriate behavior.

In denying defendant's motion for a new trial, the trial court emphasized that *Cooks* applied to situations where the prosecution offered evidence of multiple acts, "each of which would satisfy the actus reus element of a single charged offense." See *id*. at 530. The trial court opined that *Cooks* did not apply to the instant case because "[n]o single act of the defendant, no single check received, was sufficient to satisfy the actus reus element of the charged offense," i.e., no single check was in an amount greater than $1,000. But in this matter, because the jury could convict defendant by finding that some, but not all, of the alleged acts were proven beyond a reasonable doubt, it is impossible to determine if the jury unanimously agreed upon acts underlying defendant's conviction. This is the very problem that the specific unanimity instruction is designed to address. See *id*. at 525, 528; *People v Yarger*, 193 Mich App 532, 537; 485 NW2d 119 (1992). When a combination of some, but not all, alleged acts would satisfy the *actus reus* of the charged offense, then the danger that the jury's conviction is not based on unanimous agreement as to which acts defendant committed is just as present as in a situation in which each of the multiple acts alleged would, by themselves, satisfy the *actus reus*.

The prosecution's argument that this was a "multi-theory" case and not a "multiple acts" case is unpersuasive. The prosecution's case was based on the allegation that defendant committed multiple acts, i.e., receiving unauthorized checks from the victim's account on four occasions and failing to pay rent an on unspecified number of occasions. Under the plain meaning of the phrase, the prosecution proceeded on a multiple-acts basis. Moreover, the case cited by the prosecution, *People v Johnson*, 187 Mich App 621; 468 NW2d 307 (1991), provides an example of a "multi-theory" case and is distinguishable from the instant case. In *Johnson*, the prosecution alleged that defendant committed one act and the prosecution proceeded on multiple theories regarding the defendant's state of mind when committing that act. *Id*. at 629-630. This Court held that the jury did not need to unanimously agree on which one of these states of mind defendant had when he committed the act. *Id*. Although the jury in *Johnson* was presented with multiple possible states of mind that the defendant could have had that would satisfy the charge, there was no danger that the jury might not unanimously agree on the *actus reus* of the charge. This is distinct from the instant case, in which the jury was presented with a number of alleged acts, and a combination of some, but not all, of those acts would satisfy the charge.

In sum, we conclude that a specific unanimity instruction was required under the facts of this case.

B.  INEFFECTIVE ASSISTANCE OF COUNSEL

Whether defendant is entitled to a new trial because he or she received ineffective assistance of counsel is a mixed question of law and fact. *People v Trakhtenberg*, 493 Mich 38, 47; 826 NW2d 136 (2012). We review the trial court's findings of fact for clear error and questions of law de novo. *Id*. When there has been no evidentiary hearing held below, our review is limited to mistakes that are apparent on the record. *People v Gioglio (On Remand)*, 296 Mich App 12, 20; 815 NW2d 589 (2012), vacated not in relevant part 493 Mich 864 (2012).

To prevail on a claim of ineffective assistance of counsel, defendant must demonstrate that (1) defense counsel's performance fell below an objective standard of reasonableness, and (2) but for counsel's deficient performance, there is a reasonable probability that the result of the trial would have been different. *Strickland v Washington*, 466 US 668, 690; 104 S Ct 2052; 80 L Ed 674 (1984); *Trakhtenberg*, 493 Mich at 51.

When analyzing whether defense counsel's representation fell below an objective standard of reasonableness, there is a strong presumption that defense counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *People v Vaughn*, 491 Mich 642, 670; 821 NW2d 288 (2012). Defense counsel's conduct does not fall below an objective standard of reasonableness if the court can conceive of a legitimate strategic reason for that conduct. *People v Clark*, 330 Mich App 392, 427; 948 NW2d 604 (2019).

Regarding the prejudice prong, defendant has the burden to prove that, but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different. See *Vaughn*, 491 Mich at 671; *Trakhtenberg*, 493 Mich at 51. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 US at 664. We conclude that the lack of a specific unanimity instruction in this case is sufficient to undermine confidence in the outcome of the trial. *Id*.

In the instant case, defendant has shown that defense counsel's performance fell below an objective standard of reasonableness. See *id*. at 688; *Trakhtenberg*, 493 Mich at 51. As discussed, a specific unanimity instruction was appropriate in this matter because of the multiple acts alleged by the prosecution and the distinct defenses defendant put forth for each alleged act. Additionally, we cannot conceive of a strategic reason for defense counsel to not request a specific unanimity instruction. See *Clark*, 330 Mich App at 427. Therefore, we conclude that defense counsel's performance fell below an objective standard of reasonableness when she did not request a specific unanimity instruction. See *Strickland*, 466 US at 688; *Trakhtenberg*, 493 Mich at 51.

We also conclude that there is a reasonable probability that failure to request a specific unanimity instruction affected the outcome of the trial. We cannot say with any confidence that there was unanimity on defendant's conviction *relative to the specific underlying acts supporting that conviction*. See *Strickland*, 466 US at 664. We cannot conclude so because the trial court did not give the jury a specific unanimity instruction, nor was one requested by defense counsel. Although the evidence may have been sufficient for a jury to conclude that defendant committed all of the alleged acts, it appears reasonably probable that the jurors could have assessed the weight and credibility of the evidence differently and reached their verdicts on different factual bases. Therefore, on this record, we conclude that there is a reasonable probability that, but for counsel's

error, a different outcome would have resulted.  Having established her ineffective assistance of counsel claim, defendant is entitled to a new trial.  *Trakhtenberg*, 493 Mich at 51.

We vacate defendant's conviction and remand for a new trial.  We do not retain jurisdiction.[2]

/s/ Michelle M. Rick
/s/ Mark T. Boonstra
/s/ Colleen A. O'Brien

---

[2] In light of our ruling, we find it unnecessary to address defendant's remaining claims.