*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

TAREK LAMAR PARISH,

Defendant-Appellant.

UNPUBLISHED
October 17, 2024
11:30 AM

No. 363307
Kent Circuit Court
LC No. 19-007084-FH

Before: YATES, P.J., and CAVANAGH and BOONSTRA, JJ.

PER CURIAM.

Defendant, Tarek Lamar Parish, was tried on four charges. The jury was unable to reach a unanimous verdict on three of those four charges, i.e., two counts of third-degree criminal sexual conduct (CSC-III), MCL 750.520d(1)(c) (sexual penetration of a mentally incapacitated victim), and one count of fourth-degree criminal sexual conduct (CSC-IV), MCL 750.520e(1)(c) (sexual contact with a mentally incapacitated victim), but the jury found defendant guilty on the charge of first-degree criminal sexual conduct (CSC-I), MCL 750.520b(1)(f) (sexual penetration by force or coercion causing personal injury). The trial court sentenced defendant as a fourth-offense habitual offender, see MCL 769.12, to serve 25 to 45 years' imprisonment. On appeal, defendant contends that his conviction was the product of ineffective assistance of counsel because his attorney failed to request a specific unanimity instruction for the jury. Because we find that defendant's attorney furnished ineffective assistance of counsel by failing to request a specific unanimity instruction and the deficient performance caused defendant prejudice with respect to the charge of CSC-I, we vacate that conviction. But because the ineffective assistance of counsel had no impact on the jury verdict with respect to the necessarily included lesser offense of CSC-III, we remand the case with the direction that the trial court should enter a conviction on the offense of CSC-III involving force or coercion and resentence defendant for that offense, as opposed to CSC-I.

## I. FACTUAL BACKGROUND

In January 2019, defendant engaged in a series of sexual encounters with the victim, who was 22 years old at the time and suffering from some level of mental disability resulting from her

-1-

childhood battle with a brain tumor and the resulting treatment.[1] The exact dates of the encounters are somewhat unclear, but the evidence suggested that the sexual encounters began on January 22, 2019, and continued every day until the victim told her mother of the ongoing sexual encounters and her mother contacted the police on January 29, 2019. As a result of one sexual encounter, the victim became pregnant, and DNA evidence left no doubt that defendant impregnated her.

The victim first met defendant when the apartment complex where they lived in separate apartments was evacuated after reports of a gas leak. While the residents were outside, defendant approached the victim and struck up a conversation. The victim next saw defendant outside of her apartment door when she returned home from work one night. Defendant asked her for her phone number, and when she did not provide it, defendant took her phone from her hand and programmed his number into her phone. Then defendant started sending text messages to the victim, including one asking her to meet on the stairs of their apartment complex to talk. Instead, the victim invited defendant to come to her apartment. The victim stated that while she and defendant were hanging out in her apartment, she told defendant "everything" about her life and her disability. They also watched a movie during that visit.

According to the victim, when the movie ended, defendant approached her and started to pull down her pants. The victim said she did not know what defendant was doing and she tried to pull her clothes back up, but defendant kept pulling her pants down. The victim testified that then defendant penetrated her "private part" with his penis, and also "put his mouth down there." The victim stated that defendant bit her butt and penetrated her anus with his penis. She said she told defendant to stop and that it hurt, and that defendant told her he was going to make her feel better.

After that initial sexual encounter, defendant and the victim had sex in her apartment every day for a week. According to the victim, she would find defendant waiting for her by her apartment or he would text her to open her apartment door for him every time she returned home from work. The victim testified that she was scared of defendant and felt that she had to act like she liked the sexual activities, but the sexual acts made her bleed. The victim and defendant communicated via text message extensively during the week that they were having the sexual encounters. The victim sent defendant text messages suggesting the sexual relationship was consensual, such as messages that said "come fuck me," "I'm horny," "come get in my bed," and telling defendant to "hurry up" when he told her that he was on his way.

The victim eventually disclosed the sexual encounters to her mother, who promptly notified the police. The victim went to the Young Women's Christian Association, and Dr. Dianne Decator performed a sexual-assault examination. Dr. Decator found no trauma to the anal area, vulva area, clitoral area, perineum, labia majora, labia minora, or posterior fourchette. But Dr. Decator noted an abrasion in the fosse area below the hymenal area, and an abrasion of the victim's hymen. The victim thereafter learned that she was pregnant, and DNA testing revealed that defendant was the father of the child.

---

[1] The victim's disability required her mother to become her legal guardian after the victim became an adult. The victim lived with her mother for most of her life until she moved into an apartment on her own in late 2018.

In 2019, defendant was charged with two counts of CSC-III for engaging in vaginal and anal penetration with his penis when he knew or had reason to know that the victim was mentally incapacitated and one count of CSC-IV for engaging in sexual contact with the victim when he knew or had reason to know that the victim was mentally incapacitated. In 2022, the prosecution added a charge of CSC-I for engaging in vaginal penetration with his penis causing personal injury and using force or coercion to accomplish sexual penetration. The prosecution did not tie any of the four charges to any specific sexual encounter. The charging documents simply listed the dates of all four offenses as "on or about 01/22/2019 – 01/29/2019."

On May 25, 2022, at the conclusion of a three-day trial, the jury found defendant guilty of the CSC-I offense, but the jury could not reach a unanimous verdict on the other charges. The trial court declared a mistrial on the two CSC-III charges and the CSC-IV charge, and ultimately issued an order of *nolle prosequi* on those three charges. On August 29, 2022, the trial court sentenced defendant to serve 25 to 45 years' imprisonment for the CSC-I offense. Defendant now appeals.

II. LEGAL ANALYSIS

On appeal, defendant claims his trial attorney was constitutionally ineffective for failing to request a specific unanimity instruction on the CSC-I charge for which defendant was convicted. To prevail on a claim of ineffective assistance of counsel, "defendant must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the [trial] outcome would have been different." *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012). Whether defendant was denied effective assistance of counsel at his trial is a mixed question of fact and constitutional law. *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). We review the trial court's factual findings for clear error, and we review de novo questions of constitutional law. *People v Dendel*, 481 Mich 114, 124; 748 NW2d 859 (2008). If no evidentiary hearing on defendant's ineffective-assistance claim has occurred, "our review of the relevant facts is limited to mistakes apparent on the record." *People v Riley*, 468 Mich 135, 139; 659 NW2d 611 (2003). Effective assistance is presumed, and defendant bears a heavy burden to prove otherwise. *People v Rockey*, 237 Mich App 74, 76; 601 NW2d 887 (1999). The failure to advance a meritless argument or to raise a futile objection cannot be ineffective assistance of counsel. *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010). With these stringent standards in mind, we shall first consider trial counsel's performance and then turn to the issue of prejudice.

A. DEFICIENT PERFORMANCE

The fault defendant finds in his trial attorney's performance is the failure of counsel to ask for a specific unanimity instruction for the jury. "A defendant has the right to a unanimous verdict and it is the duty of the trial court to properly instruct the jury on this unanimity requirement." *People v Martin*, 271 Mich App 280, 338; 721 NW2d 815 (2006). "Under most circumstances, a general instruction on the unanimity requirement will be adequate." *Id*. This instruction informs the jury that their verdict must be unanimous and that it is necessary that each of the jurors agrees on that verdict. M Crim JI 3.11(3). However, "when the state offers evidence of multiple acts by a defendant, each of which would satisfy the *actus reus* element of a single charged offense, the trial court is required to instruct the jury that it must unanimously agree on the same specific act if the acts are materially distinct or if there is reason to believe the jurors may be confused or disagree

about the factual basis of the defendant's guilt." *People v Cooks*, 446 Mich 503, 530; 521 NW2d 275 (1994); see also *People v Yarger*, 193 Mich App 532, 537; 485 NW2d 119 (1992) (holding that a specific unanimity instruction tells the jurors they "must unanimously agree on *which* act(s) was proven beyond a reasonable doubt"). "*Actus reus*" is "[t]he wrongful deed that comprises the physical components of a crime . . . ." *Black's Law Dictionary* (10th ed). Alternative acts are materially distinct "where the acts themselves are conceptually distinct or where either party has offered materially distinct proofs regarding one of the alternatives." *Cooks*, 446 Mich at 524. "The critical inquiry is whether either party has presented evidence that materially distinguishes any of the alleged multiple acts from the others." *Id*. at 512. Ordinarily, "the evidence will be materially distinct regarding one of the multiple acts allegedly committed by the defendant." *Id*. at 530 n 34. A specific unanimity instruction is not required when the prosecution presents "evidence of a series of materially indistinguishable acts, each of which would factually satisfy the *actus reus* element of the alleged criminal offense . . . ." *Id*. at 517.

The CSC-I charge against defendant accused him of using force or coercion to accomplish sexual penetration that caused personal injury. See MCL 750.520b(1)(f). The prosecution offered evidence that defendant and the victim engaged in sexual intercourse every day for a week, but the prosecution did not tie the CSC-I charge to a specific instance of sexual penetration. Instead, the prosecution's theory of the case appeared to be that every sexual encounter between the victim and defendant was unlawful, referring in closing argument to "the sexual assaults." Thus, as presented to the jury, there were numerous acts of penetration by defendant, each of which would satisfy the *actus reus* of the CSC-I charge. See *Cooks*, 446 Mich at 530. Additionally, the evidence presented concerning the different sexual encounters was not materially identical. See *id*. at 512-513, 524 (holding that acts are materially distinct "where either party has offered materially distinct proofs regarding one of the alternatives"). Evidence concerning the first sexual encounter suggested that defendant used force to accomplish penetration. Specifically, the victim testified that during that sexual encounter, defendant pulled down her pants and underwear, and when she tried to pull them back up, defendant pulled them down again.

But there was no evidence that any other sexual encounter involved force or coercion. The victim testified that she was scared of defendant, but the specific proof concerning the force used by defendant in the first sexual encounter was materially distinct from the evidence, or lack thereof, that force or coercion was used in any of the subsequent sexual encounters. Indeed, there was also evidence in the form of text messages suggesting that at least some of the sexual encounters were consensual. In some of those text messages, the victim invited defendant to come to her apartment and explicitly requested that defendant perform sexual acts on her. Thus, on this record, evidence was presented that materially distinguished some of the alleged sexual acts from others. See *id*. at 512.

At the end of the trial, the trial court instructed the jury that "[a] verdict in a criminal case must be unanimous" and that "[i]n order to return a verdict it is necessary that each of you agree on that verdict." But the record shows that the prosecution offered evidence of multiple acts, each of which would satisfy the *actus reus* of the charge of CSC-I, and the acts were materially distinct. See *id*. at 530. Therefore, a specific unanimity instruction was warranted. See *id*.

In reaching that conclusion, we have considered two issues raised by the prosecution. First, the requirement that the multiple acts must each "satisfy the actus reus element of a single charged

offense," as discussed in *Cooks*, 446 Mich at 530, does not mean a specific unanimity instruction is only appropriate when the defendant is facing just one charge. Instead, the rule stated in *Cooks* requires that the multiple acts each must satisfy the *actus reus* of the same charge, without regard for whether the defendant faced other charges. The fact that defendant here faced multiple charges does not negate the fact that the prosecution provided evidence of multiple acts by defendant, each of which would satisfy the *actus reus* element of the CSC-I charge. See *id*.

Second, a specific unanimity instruction here would not require the prosecution to establish which sexual encounter caused the victim's pregnancy. Rather, to the extent the prosecutor relied on the pregnancy to satisfy the personal injury element of CSC-I, the prosecutor had to establish that the sexual penetration that caused the victim to become pregnant was accomplished by force or coercion. In a situation where two people engaged in multiple sexual penetrations over a short period of time, some consensual and others the product of force or coercion, such a showing may well be impossible. But that impossibility does not absolve the prosecution of its burden to prove each element of the charged crime beyond a reasonable doubt.

Based on our conclusion that a specific unanimity instruction was appropriate in this case, we also necessarily conclude that defense counsel's performance fell below an objective standard of reasonableness when he failed to request a specific unanimity instruction. We can conceive of no reasonable trial strategy that would support choosing not to request such an instruction. There was some evidence that the first sexual encounter was the product of force based on the victim's testimony, but the only evidence that the other penetrations were the product of force or coercion was the victim's testimony that she was scared of defendant. Balanced against that weak evidence of force in most of the sexual encounters was compelling evidence in the form of text messages from the victim that some of the sexual encounters were consensual. Because defendant's counsel did not request a specific unanimity instruction, there was a risk the jury would convict defendant of CSC-I even though the jury could not agree on whether a penetration involving force or coercion resulted in injury to the victim. Thus, defendant's counsel performed deficiently in that regard.

## B. PREJUDICE

The more complicated aspect of our analysis of defendant's claim of ineffective assistance of counsel concerns defendant's effort to establish prejudice. Divining a jury's thinking based on its verdict is a risky undertaking, but the verdict here leads ineluctably to the conclusion that the jury found that defendant employed force or coercion to accomplish the first sexual penetration of the victim's vagina with his penis. The trial court properly instructed the jury that they could only convict defendant of CSC-I if the prosecution "prove[d] that the defendant used force or coercion to commit the sexual act." The only sexual encounter that included evidence of force was the first sexual encounter, when defendant tried to remove the victim's pants, but she kept trying to pull up her pants until defendant nonetheless succeeded in removing them. Because of that, an instruction on specific unanimity would have made no difference in the outcome of the jurors' consideration of the element of force or coercion. Because sexual penetration accomplished by force or coercion, without any injury, constitutes CSC-III, see MCL 750.520d(1)(b), the jurors' guilty verdict on the CSC-I charge reflects a unanimous decision supporting a conviction for CSC-III, irrespective of any infirmity in the jury's finding of injury. In other words, CSC-III under MCL 750.520d(1)(b) is a necessarily included lesser offense of CSC-I under MCL 750.520b(1)(f) inasmuch as CSC-III under MCL 750.520d(1)(b) requires proof of the same elements as CSC-I except for injury.

-5-

The prejudice to defendant flowing from his trial attorney's deficient performance concerns only the elevation of the offense of conviction from CSC-III to CSC-I based on injury to the victim in the form of pregnancy.[2] See *People v Petrella*, 424 Mich 221, 239; 380 NW2d 11 (1985) ("the element of 'personal injury' elevates the offense of third-degree CSC to first-degree CSC"). Even if the jury had received a specific unanimity instruction, their verdict on the CSC-I charge reveals that they would have unanimously found beyond a reasonable doubt that defendant committed all the elements of CSC-III. The jury's inability to reach a verdict on the other three charges does not undermine our interpretation of their conclusion that defendant committed CSC-III by engaging in penetration by force or coercion. The other charges accused defendant of accomplishing sexual penetration or sexual contact by taking advantage of a mentally incapacitated victim, so the jury's failure to reach a verdict on those charges reveals an inability to unanimously determine beyond a reasonable doubt that the victim was mentally incapacitated, which has nothing to do with force or coercion. Hence, in assessing whether "there is a reasonable probability that the outcome [of the trial] would have been different" without counsel's deficient performance, see *Trakhtenberg*, 493 Mich at 51, the most we can say is that defendant might not have been convicted of CSC-I in the absence of deficient representation. We cannot say that, without the deficient performance of defense counsel, an innocent man would not have been convicted.

According to Michigan law, prejudice exists when there is " 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " *People v Randolph*, 502 Mich 1, 9; 917 NW2d 249 (2018). Faithfully applying that standard, we must conclude that defendant's conviction of CSC-I cannot stand. Without his attorney's failure to request a jury instruction on specific unanimity, there is a reasonably probability that defendant would not have been convicted of CSC-I because the prosecution did not establish that the victim's pregnancy—or any other personal injury—resulted from the sexual penetration accomplished by force or coercion.[3]

But our inquiry does not end with our conclusion that ineffective assistance of counsel calls for vacation of defendant's conviction for CSC-I. Because CSC-III under MCL 750.520d(1)(b) is a necessarily included lesser offense of CSC-I under MCL 750.520b(1)(f) and defense counsel's

---

[2] The parties focused at trial on the victim's pregnancy as the resulting personal injury. By statute, pregnancy is defined as a "personal injury" in the context of criminal sexual conduct offenses. See MCL 750.520a(n). "Bodily injury" also qualifies as "personal injury." *Id*. When the victim was asked whether she ever had "any injuries or bleeding," she answered "yes," but she did not identify any injury when asked: "What injury did you have or how were you bleeding?" More significantly, and although bleeding may reflect a "bodily injury," the victim did not testify that bleeding resulted specifically from the first sexual encounter, which (as we have noted) must have formed the basis for the jury's guilty verdict on the CSC-I charge. Similarly, a sexual assault nurse examiner who testified at trial stated that "no injury was visualized" except for two genital abrasions visible only with toluidine blue dye, and there was no evidence linking those abrasions specifically to the first sexual encounter.

[3] Even if the victim's professed bleeding and her genital abrasions are considered injuries, neither the abrasions nor the bleeding was proven to be the result of the sexual penetration accomplished by force or coercion during the first encounter between the victim and defendant.

deficient performance had no impact on the proofs concerning CSC-III based on force or coercion, we must consider the effect of our conclusion that the jury found every element of CSC-III under MCL 750.520d(1)(b) beyond a reasonable doubt. As our Supreme Court has explained, "a jury's verdict regarding a necessarily included lesser offense always is encompassed in the verdict on the greater offense." *People v Bearss*, 463 Mich 623, 631; 625 NW2d 10 (2001). Thus, the conclusion that defendant's CSC-I conviction must be vacated "does not impede [this Court] from remanding for entry of judgment of a necessarily lesser included offense." *Id*. Indeed, both the United States Supreme Court and our Supreme Court "ha[ve] approved the use of this remedy in cases 'when a conviction for a greater offense is reversed on grounds that affect only the greater offense.' " *Id*., quoting *Rutledge v United States*, 517 US 292, 306; 116 S Ct 1241; 134 L Ed 2d 419 (1996). Here, that approach perfectly fits the circumstances presented to us. Accordingly, we vacate defendant's conviction for CSC-I, but we remand the case with the direction that the trial court should enter a conviction on the offense of CSC-III involving force or coercion and resentence defendant for that offense. *People v Lockett*, 295 Mich App 165, 182; 814 NW2d 295 (2012) (remanding "for entry of convictions on defendants' lesser included offenses" "[b]ecause a jury could not have convicted defendants on the charged counts of CSC-I . . . without determining that defendants also committed the underlying felony").

Conviction for CSC-I vacated, and case remanded for entry of a conviction for the offense of CSC-III under MCL 750.520d(1)(b) and for resentencing for that offense. We do not retain jurisdiction.

/s/ Christopher P. Yates
/s/ Mark J. Cavanagh
/s/ Mark T. Boonstra