*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

DELANO MARQUEZ,

Defendant-Appellant.

UNPUBLISHED
June 10, 2026
10:19 AM

No. 370914
Wayne Circuit Court
LC No. 20-002816-01-FC

Before: YOUNG, P.J., and BORRELLO and TREBILCOCK, JJ.

PER CURIAM.

Defendant appeals as of right his jury-trial conviction of first-degree criminal sexual conduct (CSC-I), MCL 750.520b. Defendant was sentenced to 12 to 20 years' imprisonment for this conviction. On appeal, defendant argues (1) offense variable (OV) 10 was erroneously assigned 15 points because defendant's conduct was not predatory, and (2) the trial court improperly instructed the jury regarding unanimity requirements relating to the underlying felonies comprising aggravating circumstances. For the reasons set forth in this opinion, we affirm.

## I. BACKGROUND

In 1998, the complainant was employed on the evening shift at a coffee stand situated in the basement of Wayne State University's Student Center. While performing closing procedures, the complainant observed defendant lingering in the basement area, searching through refuse. Believing him to be an individual seeking returnable bottles, she offered him those she intended to discard. The complainant then continued her closing duties, transferring items from the stand to the office via a rolling cart. Upon reaching the office door, she encountered defendant positioned on the opposite side of the cart. She informed him that entry into the office was unauthorized. Defendant stated he was armed and demanded money, subsequently following the complainant into the office and securing the door, which locked automatically. The complainant, experiencing significant fear, endeavored to comply with defendant's instructions. There was a safe present in the office, which the complainant was unable to access. She possessed no money and pleaded with defendant not to harm her. Defendant then ordered the complainant to kneel,

-1-

bound her hands, feet, and mouth, cut her pants, and forcibly engaged in penile-vaginal penetration without her consent.

Following the sexual assault, defendant utilized a claw hammer located within the office to forcibly open the safe, removed its contents, and then fled the premises. The complainant subsequently managed to extricate herself from the restraints and attempted to contact a friend and her boyfriend prior to notifying law enforcement. Police officers responded to the scene, collected physical evidence, and obtained a statement from the complainant. She consented to undergo a forensic medical examination for the completion of a sexual assault kit. This kit remained untested "for over a decade" until the Detroit Police Department established a Sexual Assault Kit Task Force circa 2014. Analysis revealed that defendant's DNA corresponded to the sample collected in the kit. Upon receiving this information, detectives contacted the complainant, who elected to proceed with prosecution. Defendant was charged with CSC-I.

At trial, the parties stipulated to the jury instructions, including Michigan Criminal Jury Instruction 20.30(a). The trial court instructed the jury as follows: "If you all agree that the defendant committed the sexual act alleged, it is not necessary that you all agree on which of these aggravating circumstances accompanied the act." The alternative aggravating circumstances presented were: (a) entry without breaking, (b) safe breaking, and (c) armed robbery. The jury was instructed that it was sufficient if they found, beyond a reasonable doubt, that at least one aggravating circumstance was established. Defense counsel did not interpose any objection to the instruction. Defendant was convicted of CSC-I, and the instant appeal ensued.

## II. ANALYSIS

### A. OV 10

In his appeal, defendant argues that the trial court's assessment of 15 points for OV 10 is not supported by a preponderance of the evidence, as defendant's conduct was opportunistic rather than predatory. Defendant further alleges that the record does not demonstrate that defendant engaged in preoffense conduct directed at a vulnerable complainant, nor that the purpose of such conduct was victimization.

A trial court's factual findings related to the sentencing guidelines must be supported by a preponderance of the evidence and are reviewed for clear error. *People v Carlson*, 332 Mich App 663, 666; 958 NW2d 278 (2020), citing *People v Thompson*, 314 Mich App 703, 708; 887 NW2d 650 (2016). Clear error has occurred when, after a review of the entire record, this Court is "definitely and firmly convinced that the trial court made a mistake." *Carlson*, 332 Mich App at 666, citing *People v Armstrong*, 305 Mich App 230, 237; 851 NW2d 856 (2014). Whether the facts adequately satisfy the statutory scoring conditions is a question this Court reviews de novo. *Carlson*, 332 Mich App at 666, citing *Thompson*, 314 Mich App at 708.

Points may be assessed under OV 10 when a vulnerable complainant has been exploited. *People v Cannon*, 481 Mich 152, 157-158; 749 NW2d 257 (2008). "[P]oints should be assessed under OV 10 only when it is readily apparent that a complainant was 'vulnerable.' " *Id*. at 158, citing MCL 777.40(3)(c). MCL 777.40(3)(c) defines "vulnerability" as "the readily apparent susceptibility of a complainant to injury, physical restraint, persuasion, or temptation." Among

factors to be considered in determining vulnerability is "whether the offender exploited a complainant by his or her difference in size or strength or both." *Cannon*, 481 Mich at 158. Susceptibility is not limited to characteristics of the complainant; it can also arise from external circumstances. *People v Huston*, 489 Mich 451, 466; 802 NW2d 261 (2011).

OV 10 may be assigned 15 points when predatory conduct was involved. MCL 777.40(1)(a). "Predatory conduct" includes "preoffense conduct directed at a complainant . . . for the primary purpose of victimization." MCL 777.40(3)(a). In other words, it is "behavior that precedes the offense, directed at a person for the primary purpose of causing that person to suffer from an injurious action or to be deceived." *Cannon*, 481 Mich at 161. In *Huston*, 489 Mich at 458-459 our Supreme Court clarified the preoffense predatory conduct need not be directed at "the" specific, known victim, but conduct directed at "a" victim sufficed. Additionally, preoffense conduct within the meaning of MCL 777.40(1)(a) does not refer to *any* preoffense conduct; rather, it encompasses only preoffense conduct "commonly understood as being 'predatory' in nature, e.g., lying in wait and stalking, as opposed to purely opportunistic criminal conduct." *Huston*, 489 Mich at 462. In *Cannon*, our Supreme Court distinguished between predatory and opportunistic conduct with examples:

> A lion that waits near a watering hole hoping that a herd of antelope will come to drink is not engaging in conduct directed at a complainant. However, a lion that sees antelope, determines which is the weakest, and stalks it until the opportunity arises to attack it engages in conduct directed at a complainant. Contrast that with an individual who intends to shoplift and watches and waits for the opportunity to commit the act when no one is looking. The individual has not directed any action at a complainant. [*Cannon*, 481 Mich at 160 (footnote omitted).]

Our Supreme Court delineated three analytical questions for determining if OV 10 was properly assigned 15 points: (1) whether the offender engaged in conduct before commission of offense; (2) if so, whether the conduct was directed at a specific, vulnerable complainant, and (3) whether the primary purpose of the offender's preoffense conduct was victimization. *Id*. at 161-162. If the answer to each of these questions is "yes," 15 points may be properly assessed under OV 10. *Id*. at 162.

In *Carlson*, 332 Mich App at 668, this Court found that the defendant's lingering near condominium units where the complainant was staying constituted preoffense conduct. Similarly, in *Huston*, 489 Mich at 463, the defendant's preoffense conduct consisted of lying in wait in a parking lot, armed and concealed, in order "to place himself in a better position to be able to successfully rob someone." Here, defendant lingered in the hallway of the student center around closing time, when the premises were otherwise empty or nearly so. The complainant observed defendant rifling through the trash and initiated contact by offering him returnable bottles. Defendant remained on the premises until the complainant completed her closing duties at the coffee stand. Thereafter, he followed her down a long hallway to the office, where the offense was perpetrated. Defendant's preoffense conduct closely resembles "lying in wait and stalking," as he remained in the student center while few individuals were present, waited until the complainant had finished closing, and then pursued her down a secluded hallway. *Id*. at 462. Defendant's actions appear to have been calculated to "place himself in a better position" to successfully commit the offense against his chosen target. *Id*. at 463. The evidence supports the

conclusion that defendant engaged in preoffense conduct as contemplated by *Cannon*, 481 Mich at 162, and such conduct is "commonly understood as being 'predatory.'" *Huston*, 489 Mich at 462.

Defendant's conduct was further directed toward a specific, vulnerable victim, as required by *Cannon*, 481 Mich at 162. In *Huston*, 489 Mich at 466–467, the complainant's vulnerability was established by her isolation in a dark parking lot. Similarly, in *People v Mahon*, 485 Mich 971, 972 (2009) (Corrigan, J., concurring), the defendant waited for employees outside a bar until 2:30 a.m., when the likelihood of others being present was minimal, rendering the victims "isolated and susceptible to injury." Here, the complainant was working alone during the evening shift, in contravention of company policy, and there were few if any other individuals present in the Student Center, amplifying her isolation. Although testimony described defendant as of medium height and smaller build, the sentencing judge may have inferred a disparity in size or strength based on the respective appearances at the time of sentencing and general biological differences between men and women, as referenced in *Cannon*, 481 Mich at 158. The complainant's offer of returnable bottles to defendant demonstrated a kindness defendant may have perceived as exploitable. Defendant followed the specific and vulnerable victim down a long hallway and into a more secluded part of the basement office, thereby increasing her "readily apparent susceptibility . . . to injury, [or] physical restraint," as contemplated by MCL 777.40(3)(c). As this Court clarified in *Huston*, 489 Mich at 466, susceptibility arising from contextual circumstances may satisfy the statutory requirements. Thus, defendant's conduct was directed at a specific, vulnerable victim as required by *Cannon*, 481 Mich at 162.

Finally, the record supports the conclusion that the primary objective of defendant's conduct was to victimize the complainant. *Id*. Defendant's actions appear to have been calculated to cause the complainant "to suffer from an injurious action." *Id*. at 161. Defendant entered the office, threatened the complainant, and demanded money, then secured the door, which locked automatically. Upon being informed by the complainant that she lacked access to money and the safe, and after her pleas for mercy, defendant stated, "I'm not going to hurt you, I'm just going to f**k you." He then restrained, sexually assaulted, and ultimately burglarized the safe. In *Carlson*, this Court inferred from the evidence that defendant's "primary purpose for engaging in the preoffense conduct" was victimization, and a similar inference is warranted here. *Carlson*, 332 Mich App at 669. Defendant's preoffense actions—including lingering, following the complainant to the office, and ensuring her complete isolation by closing the door—indicate an intent to rob the complainant, her employer, to sexually assault her, or to perpetrate a combination of these offenses. *Id*. Accordingly, the primary purpose of defendant's conduct was to inflict an injurious act upon the complainant, i.e., to victimize her. *Cannon*, 481 Mich at 162.

A preponderance of the evidence supports affirmative responses to the three analytical inquiries set forth in *Cannon*, 481 Mich at 162. Accordingly, the trial court did not clearly err in assessing 15 points for Offense Variable 10 (OV 10). *Carlson*, 332 Mich App at 666, citing *Thompson*, 314 Mich App at 708. Furthermore, a reduction of 15 points would not alter the defendant's minimum sentencing guidelines range; thus, resentencing is not warranted. *People v Francisco*, 474 Mich 82, 90 n 8; 711 NW2d 44 (2006).

## B. JURY INSTRUCTION

Defendant contends on appeal that he was deprived of his constitutional right to a unanimous jury verdict because the instructions provided to the jury did not require unanimity as to which of the three predicate felonies were committed contemporaneously with the sexual act. He asserts that this alleged omission constitutes a violation of due process. Defendant urges this Court to hold that, in order to sustain a conviction for CSC-I pursuant to MCL 750.520b(1)(c), the jury must unanimously agree on the specific factual basis for the predicate felony. However, defendant's position stands in direct contravention of established precedent from this Court which have consistently held that unanimity is not required as to the particular predicate felony when alternative means of committing the offense are charged and supported by the evidence.

Claims of instructional error are reviewed de novo. *People v Kowalski*, 489 Mich 488, 501; 803 NW2d 200 (2011). However, defense counsel expressly agreed to the jury instructions and did not object after the court read them. The error is waived. *Id*. at 503. " 'One who waives his rights under a rule may not then seek appellate review of a claimed deprivation of those rights, for his waiver has extinguished any error.' " *Id*., quoting *People v Carter*, 462 Mich 206, 215; 612 NW2d 144 (2000).[1]

Pursuant to MCL 750.520b(1)(c), a conviction for CSC-I may be sustained where the accused engages in sexual penetration "under circumstances involving the commission of any other felony." *People v Anderson*, 331 Mich App 552, 558; 953 NW2d 451 (2020). The prevailing authority provides that "[w]hen a defendant is tried on a charge of CSC I, and more than one aggravating circumstance is supported by the facts, it is not error for the trial court to instruct the jury, in the alternative, regarding each of the applicable aggravating circumstances alleged by the prosecution." *People v Gadomski*, 232 Mich App 24, 31-32; 592 NW2d 75 (1998). Although the Michigan Constitution guarantees criminal defendants a unanimous jury verdict, Const 1963, art 1, § 14, "Michigan criminal juries are not required to unanimously agree upon every fact supporting a guilty verdict." *Gadomski*, 232 Mich App at 30-31. "More specifically, it is well settled that when a statute lists alternative means of committing an offense, which means in and of themselves do not constitute separate and distinct offenses, jury unanimity is not required with regard to the alternate theories." *Id*. at 31.

---

[1]Nevertheless, in furtherance of the interests of justice and to ensure the integrity of these proceedings, we elect to exercise our discretion to address defendant's otherwise waived issue. MCR 7.216 (A)(7). This approach accords with this Court's longstanding recognition of its authority to review claims not preserved at trial where such review is necessary to prevent manifest injustice, clarify unsettled areas of law, or address questions of substantial public importance. In so doing, we reaffirm the principle that this Court's supervisory power extends to ensuring that the administration of justice is not compromised by rigid application of procedural defaults, particularly where fundamental rights or constitutional interests may be implicated.

Here, the trial court instructed the jury: "If you all agree that the defendant committed the sexual act alleged it is not necessary that you all agree on which of these aggravating circumstances accompanied the act." Defendant contests this instruction, asserting that the absence of a unanimity requirement as to the underlying felony deprived him of a unanimous verdict. In support of his position, defendant relies on *People v Cooks*, 446 Mich 503, 505; 521 NW2d 275 (1994), in which the defendant was charged with a single count of CSC-I, but the complainant's testimony described three discrete acts of penetration. The trial court in *Cooks* declined to provide the requested instruction requiring unanimity as to the specific act of penetration. *Id*. at 508. Although the court instructed the jury on lesser included offenses and conveyed that the verdict must be unanimous, *Id*. at 509, the jury ultimately convicted the defendant of CSC-II. This Court reversed. *Id*. The Michigan Supreme Court held:

> [I]f alternative acts allegedly committed by defendant are presented by the state as *evidence of the actus reus element of the charged offense*, a general instruction to the jury that its decision must be unanimous will be adequate unless 1) the alternative acts are materially distinct (where the acts themselves are conceptually distinct or where either party has offered materially distinct proofs regarding one of the alternatives), or 2) there is reason to believe the jurors might be confused or disagree about the factual basis of defendant's guilt. [*Id*. at 524 (emphasis added).]

Here, defendant asserts that "each of the alternatives was a separate and distinct offense because each was a felony within the reach of MCL 750.520b(c)." The prosecution, by contrast, maintains that no " 'materially distinct' " acts occurred, and that the alleged underlying felonies— entering without breaking, safe breaking, and armed robbery—comprised a "continuous course of conduct."

The charged offense in this matter is CSC-I, which requires that the act of sexual penetration occur "under circumstances involving the commission of any other felony." *Anderson*, 331 Mich App at 558; MCL 750.520b(1)(c). Pursuant to *Cooks*, 446 Mich at 524, a general unanimity instruction suffices unless "the alternative acts [were] materially distinct." The felonies alleged here—entering without breaking, safe breaking, and armed robbery—are not "materially distinct" within the meaning of MCL 750.520b(c) merely because they possess different elements. In *Gadomski*, the defendant engaged in an act of sexual penetration accompanied by the commission of a home invasion, aiding and abetting, and force or coercion, and caused personal injury to the complainant using force or coercion. *Gadomski*, 232 Mich App at 29. Each act enumerated was an alternative means of establishing a single CSC-I offense, and the conviction was proper "even if some of jurors believed that he committed the offense solely on the basis of one aggravating circumstance, while the rest of the jurors believed that he committed the offense solely on the basis of another one of the aggravating circumstances." *Id*. at 31.

Here, the alternative underlying felonies are not "conceptually distinct." *Id. at* 522. Rather, they constitute facets of a single transaction. See *Cooks*, 446 Mich at 522. Defendant entered the office without breaking, seeking pecuniary gain, and represented that he was armed. He employed a claw hammer—potentially a dangerous weapon—to break into the safe in furtherance of that objective. During the commission of these felonies, defendant restrained and sexually penetrated the complainant. Each felony was advanced as an alternative means of proving

the second element of the CSC-I charge. Accordingly, defendant's argument is unavailing, as a general unanimity instruction was sufficient under *Cooks*, 446 Mich at 530.

Affirmed.

/s/ Adrienne N. Young
/s/ Stephen L. Borrello
/s/ Christopher M. Trebilcock